Eli H. Fish, Respondent, *v.* Francis Cottenet, as President of the Liverpool and London and Globe Insurance Company, Appellant.

It is now settled, in this State, that a valid contract for insurance may be made by parol.

Where one, who is insured as mortgagee, subsequently becomes owner of the premises, no new consideration is necessary to the validity of an agreement that the same insurance shall be so changed as to apply to his interest as owner.

If an agreement for insurance is made with an agent, authorized " to bind the company (his principal) during the correspondence," but, without any fault or negligence of the applicant, and through the neglect of the agent, the application is not received or acted upon by the company until a loss occurs, the company is liable.

(Argued January 14th; decided May 6th, 1871.)

Appeal from an order of the General Term of the Supreme Court, in the eighth district, affirming a judgment entered upon the report of a referee.

This was an action to compel the delivery of a policy of insurance, and the payment of $5,000 for the destruction of the property insured. The question arises upon the following state of facts:

The defendant, the Liverpool and London and Globe Insurance Company, on the 12th day of February, 1862, by letter of attorney, bearing date that day, "appointed Harry Wilbur, of Batavia, its agent, with power to receive proposals for insurance against loss and damage by fire, in Batavia and vicinity, to fix rates of premium, to receive money, subject to such instructions as might from time to time be given to him."

The appointment of Mr. Wilbur was accompanied by written instructions, saying: " Your appointment as agent gives you the power of binding the company, during the pleasure of its general agent or board of directors, to an amount not exceeding ten thousand dollars, upon alternate buildings or their contents. You are hereby instructed to avoid all specially hazardous risks, and decline them. Should any be

offered you, from parties of the highest character, you will forward the application, with your comments thereon, and may bind the company during the correspondence.     *     * On accepting a risk, you will fill up the application, and, when desired, issue your certificates of insurance, which should be returned upon receipt of policy.     *     *     *     All remittances are to be made on the first day of each month."

The company did not intrust Wilbur with blank policies, to be filled up and signed by him.

Upon his application to the company to do so, its general agent wrote to him, on the 12th day of November, 1863: "We send by early mail policies, as per application. I am fully satisfied that you can do quite as large a business by having policies issued here as if written by you. The delay of one day is trifling, when the insured are as fully protected when you take the risk as if the policy was delivered."

Under his appointment, Wilbur opened an agency and transacted business for the company, from February, 1862, until after January, 1864, at Batavia.

In 1864, further instructions were sent the agent, containing the following directions, among others: "Remittance must be made up and forwarded to Albany on the first of each month, including every item to that date, * * whether the premium be collected or not.     *     *     Risks may be taken for the following amounts, viz.: On hazardous and non-hazardous, $20,000; extra hazardous, $10,000; specially hazardous, $5,000; to be increased only by special permission."

In June, 1863, the plaintiff, being the owner of the brewery buildings and property mentioned in the complaint, sold and conveyed them to one Boyle and one Smith, who gave to him their mortgage thereon, to secure the payment of $8,000, being part of the purchase-money thereof.

The brewery buildings, in the business of insurance, are stated as specially hazardous.

On or about the 20th day of October, 1864, the plaintiff applied to Wilbur, as agent, to insure him upon the brewery buildings, as mortgagee, against loss and damage by fire, to

the amount of $5,000. And it was then verbally agreed, between the plaintiff and Wilbur, who assumed to act· in behalf and in the name·of the company, that the company, from that time forth, and for the space of one year therefrom, would insure the plaintiff, upon the brewery buildings, against loss and damage by fire, in the sum of $5,000, and would deliver to the plaintiff its policy of insurance accordingly; and that the plaintiff would, when requested (its then payment being waived), pay to the company two and a half per cent upon that sum, as the premium for insurance. On the 24th day of October, 1864, the plaintiff became the owner, in fee, of the brewery buildings and property. On that day he called upon Wilbur, and informed him of the fact that he had become the owner of the property, and that, if the policy had not been made out, he wished it made to him as owner, instead of mortgagee. Wilbur told him that it should be so made over.

The plaintiff, after this, frequently called upon Wilbur, to get the policy, and Wilbur, upon each and every of said occasions, told the plaintiff that the policy had not yet come, but that it would come; that he need not give himself any trouble about it; and that he was just as much insured as if he had the policy. The plaintiff acted in good faith, and relied upon the agreements and upon the statements of Wilbur.

On the 24th day of January, 1865, the buildings were destroyed by fire, and the plaintiff thereby sustained loss to an amount exceeding $5,000.

No policy of insurance upon the buildings was ever delivered by the company to the plaintiff; nor was the premium ever demanded or paid. Wilbur never communicated to the company the application of the plaintiff for insurance, nor the agreement made with him. Immediately after the loss by fire, the plaintiff made and delivered to the company proper proofs of the loss.

The company issued to Boyle and Smith, while they were the owners of the brewery property, a policy of insurance upon the buildings against loss by fire, and which policy, upon

the demand of the company, between the 15th and 24th of October, 1864, was cancelled.

The company demanded this surrender, of the policy issued to said Boyle and Smith, solely on account of a rumored attempt by one of them to fire the buildings, and not on account of the hazardous character of the buildings, and of which the plaintiff had notice.

The referee, to whom the case was referred, decided that Wilbur had, as agent of the company, authority to make, on its behalf, the agreement with the plaintiff; that the agreement is valid, and binding upon the company; that the plaintiff, having acted in good faith, and without knowledge of Wilbur's neglect to communicate with the company, is not affected thereby; and that the plaintiff is entitled to recover the sum of $5,000 and interest, less the premium. Judgment was entered for the plaintiff on his report, which was affirmed by the General Term of the eighth district. The defendant now appeals to the Court of Appeals.

*Samuel E. Lyon*, for the appellant.

*Charles Henshaw*, for the respondent.

HUNT, C. The point is made by the appellant, that the contract of October 24th was void for want of consideration, there being no agreement then made by the plaintiff to pay the premium. The argument goes to this length, that, if Mr. Fish had received a policy covering his interest as mortgagee, and four days thereafter, having become owner of the property, had applied for a change thereof, expressing that his interest was that of owner, and the defendant had made an indorsement to that effect, stipulating that the indemnity should continue, no recovery could be had thereon in the event of a loss. A consideration is equally necessary in a written contract and in a parol contract. The change in both cases is the same. The property insured and the premium to be received are the same. The character of the

ownership only is affected. I apprehend that, in such case, no new consideration is needed. No repetition of the terms of the original agreement is required. They all remain in force, except so far as specifically changed, and furnish aliment to the new arrangement. The doctrine that the terms of a contract may be legally altered by mutual consent, and without a new consideration, is well settled. (*Blanchard* v. *Trim*, 38 N. Y. R., 225.)

Assuming, for this purpose, that a parol insurance is valid, the appellant insists that the court will not enforce its execution, under the circumstances in this case. The defendant's agent at Buffalo had cancelled a previous policy on the same property, which, it is said, was known to the plaintiff. If such was the case, and the plaintiff had such knowledge, he also knew that it was so cancelled, not from any objection to the property, but to the parties insured. Boyle and Smith had got into a controversy about the property, and one of them attempted to fire the brewery. The referee expressly finds that the cancelling of the policy was from this cause alone. There was nothing in this important to be told to Wilbur, the agent, or that should excite suspicion in the mind of the plaintiff, or justify him in a direct application to the company for his policy. The plaintiff did, from time to time, call upon Wilbur for his policy; who told him not to be uneasy, that it would soon arrive, and that he was safe in any event.

It is said, again, that the agent had no power to bind the company for risks of this character, for a longer time than was necessary to transmit the application to Albany and to receive a reply.

This argument is not sound. By his first instructions, the agent was authorized " to bind the company during the correspondence." This means during the negotiations, until the company decide whether they will or will not take the risk, and inform the appellant of their decision. Delays of agents, negligence in the home office, irregularity in the mail, are all included in this time. Mr. Wilbur was authorized to receive

the application, and to bind the company until they announced that they declined the risk. A few days, or a few weeks, ought to give time enough for this. The applicant, however, cannot hasten the action of the company. He can only wait, and if in good faith, he may wait, as in this case, from October until January.

By his instructions of 1864, the agent was authorized to insure $5,000 in one risk on specially hazardous property. The brewery was of that character, and the agent did not exceed the amount authorized to be taken. These instructions modify those of 1862, and give the agent authority to take risks of a character specially hazardous.

The appellant also insists that the recovery is erroneous, because the agreement was not in writing and signed by the parties or their agents. There was doubt at one time on this point. It is, however, no longer doubtful in this State, that a good agreement for insurance may be made by parol. (*Trustees Baptist Church* v. *Brooklyn*, 19 N. Y. R., 305 ; *Audubon* v. *Excelsior Ins. Co.*, 27 id., 216.) But one further objection is now urged, to wit: that the contract is void for want of a stamp.

Contracts of this character, when put in writing, certainly require a stamp. If the defendant had performed its agreement and issued a policy, the government would have received the aid to its revenue, which is so much required. It is not the making of the agreement that defrauds the revenue, but its breach by the defendant. Agreements, when in writing, must be stamped. A stamp upon an oral agreement is an impossibility. The passing words cannot be caught and subjected to a material process. A stamp, indeed, might be purchased and cancelled, whenever parties shall make an oral contract. If congress shall so enact, the work can probably be performed. They have as yet enacted only that agreements in writing and instruments shall be thus dealt with.

The judgment should be affirmed.

All concur. Judgment affirmed with costs.