GEORGE K. COOKE *et al.* Respondents, *against* THE ÆTNA INSURANCE COMPANY OF NEW YORK, Appellant.

(Decided April 1st, 1878.)

A parol contract of insurance made by an incorporated fire insurance company, the charter of which does not limit its powers of insuring to written policies, is valid.

If the provisions of its charter are that it may insure, and that all policies shall be subscribed and countersigned by certain of its officers, it has power to make a parol contract of insurance.

A parol agreement to insure certain property in a certain building for a certain term from date and for a certain amount, although the rate of premium is left uncertain and to be fixed by the company after inspection of the building, is a complete contract of insurance, and the company will be bound for a loss occurring thereafter in the term and before the rate of premium has been communicated to the assured.

Where the principal clerk of an incorporated fire insurance company, whose duties

were to receive applications, fill out policies and renewals, and to "generally attend to whatever was transacted behind the counter," made at the place of business of the company a parol contract of insurance with an applicant, *Held* that the company were bound by the act of the clerk.

APPEAL from a judgment entered upon a decision of the general term of the Marine Court of the city of New York, affirming a judgment entered upon a verdict for plaintiffs rendered at a trial term of that court, and affirming an order of the special term of that court denying a motion made upon case and exceptions for a new trial.

The action was brought to recover $1,500 and interest from January 30th, 1876, on policy of fire insurance. In February, 1875, defendant insured plaintiffs against loss or damage by fire: "$800 on their vulcanizer, moulding presses, lathe tools, machines, type and materials for the manufacture of rubber, stereotype and hand stamps; $100 on their office and shop furniture and fixtures, safe, partitions and improvements; and $600 on their stock finished, unfinished and in process, merchandise, hazardous and extra hazardous, all contained in the brick and stone building situate at No. 92 Chambers street, New York City," for one year, commencing February 19th, 1875, and ending February 19th, 1876. In the latter part of July, plaintiffs moved their machinery (insured at $800), one desk of the value of $10 (part of the office furniture insured at $100), and what other property does not appear, to a building in Williamsburgh, L. I., on the corner of First street and South Eleventh street, and there continued manufacturing; the goods as manufactured being sent to 92 Chambers street, there to remain until delivered; plaintiffs having retained the premises originally insured, and having left there such property as had not been removed to Williamsburgh. About July 28, 1875, at or about the time of moving, one of the plaintiffs, Oliver H. Perry, went to the defendant's office in New York City and asked Mr. Richardson, the company's principal clerk, whom he saw behind a counter at a desk, to transfer the insurance to the building corner of First street and South Eleventh street, Williamsburgh, and handed Mr.

Cooke v. Ætna Insurance Co. of New York.

Richardson the policy. Mr. Richardson assented either by word or sign. Mr. Perry asked him what the rate would be, and he said he would examine and let plaintiff know; plaintiff asked him if he would make it binding to-day, or at that time, and his reply was " Yes." He may have said something about an increased rate; plaintiff referred to the other insurance on the Williamsburgh property, and asked if the company could reduce the rate to the same. Mr. Richardson was to inform plaintiffs about the rate, and it was after that he said he would keep the policy binding. Plaintiff then left the policy and went away. Nothing further was said or done between the parties. On October 9th, 1875, a fire occurred in the Williamsburgh premises, by which the plaintiffs lost $4,157 35 on their machinery, $125 65 on furniture and $2,112 97 on merchandise. Mr. Perry went on that day to the company's office, saw Mr. Bogart, the secretary, who stated they had no insurance on that building ; he afterwards received the policy in a letter. The evidence of Mr. Richardson, on the other hand, was positive that plaintiff came to the office on August 11, 1875, and gave him the policy, saying : " You are charging me too high; I want the rate reduced. I have moved to a much better place than I was before. If you cannot reduce the rate I want you to cancel the policy ; " that witness looked at the map and replied, " Instead of reducing the rate we ought to increase it very much by the indications on the map ;" plaintiff said, " I cannot pay any more. If you cannot reduce the rate I want you to cancel the policy ; " that the witness told him to step in in a day or two and they would have a report by the surveyor and would tell him exactly what they could do about it ; that plaintiff went off; that the survey was made and the risk found to be much greater ; the policy was placed and kept in a pigeon hole among the cancelled policies. He testified also that plaintiff did ask him to make the policy binding, and that he answered that he could not until they had a report from the surveyor ; that plaintiff told him there was a responsible company insuring this place in Brooklyn at a lower rate, and he would like his policy brought down

as low as that; witness made a memorandum "*survey*" on the application and survey books while plaintiff was talking to him; it was a direction to the surveyor to go and examine the risk; this was made while plaintiff was talking; he saw it, and witness stated the substance to him—that he wanted to move to such a place—and read it off to him. Plaintiff being recalled denied all this. The court instructed the jury that if they believed the evidence of the plaintiffs their verdict must be for plaintiff; if they believed the evidence of the defendant's witnesses the verdict must be for defendant. The jury found for the plaintiffs in the full amount of the policy. A motion for a new trial was denied

*Henry E. Davies, Jr.*, for appellants.

*N. B. Hoxie*, for respondent.

JOSEPH F. DALY, J.—The verdict of the jury having established the correctness of plaintiff's version of the transaction between him and Richardson, the clerk of defendant, the first question to be considered is, whether plaintiff Perry's testimony showed a valid contract for insurance of property in the building in Williamsburgh. The plaintiff's application in July, 1875, was for an entirely new insurance; the application was definite and certain in all particulars, for by handing over the old policy with the request to transfer the insurance to the building specified, plaintiffs in effect applied for insurance to the amount, and upon the goods, and in the proportion for each class as set out in the old policy, and on the terms, and subject to the conditions, and at the rate specified therein, and for a term to end on February 19th, 1876; but describing the building where the goods were as the corner of First and South Eleventh streets in Williamsburgh. If Mr. Richardson had authority to bind the company, the company assented to the application and agreed, in answer to plaintiff's inquiry, that the new insurance would be binding that day, or from that time, leaving nothing unsettled but the rate of premium.

The insurance, although by parol, was valid. (*Fish* v. *Cottenet*, 44 N. Y. 538.) The defendant's charter declared that all policies should be subscribed by the president or vice-president, or by a president *pro tempore*, and counter-signed by the secretary or assistant secretary ; but this provision applies only to cases where the contract of insurance is evidenced by a writing, and does not destroy the power to make a parol contract. (*Trustees of the First Baptist Church* v. *Brooklyn F. I. Co.*, 19 N. Y. 305.) Did the minds of the contracting parties meet as to the essential points to the contract for a valid insurance, *i. e.*, as to the premises, the risk, the amount, the time and the premium ? (Same case, 28 N. Y. 153.) As to the premises and the amount there can be no question ; as to the risk I think there can be none, because the insurance was agreed to on the spot. A company may, *in good faith*, take whatever risk it please, and if it choose to make a contract with a knowledge of *the particular building* and the amount required before examining the premises it agrees to that risk. As to the time of the policy, I have suggested that it was certain, because the insurance in the policy then running was to be transferred to the new premises, and that was insurance terminating on February 19th, 1876. As to the premium, plaintiff having asked for and received assurance against loss *from that day*, with the understanding that the rate was to be fixed by the company upon examination, would be bound to pay such reasonable premium as the company exacted for the insurance he had thus obtained. The company by its agreement contemplated taking the risk offered and of charging the rate warranted by it, and the assured understood and assented to this. Such an open arrangement has never been held too indefinite to be the basis of a valid contract. (See opinion of Judge Emott in case last cited.) I apprehend it will never be decided that a present contract for insurance is invalid because the amount of premium is not mentioned on either side, but is left until the policy is made out and delivered, and the receipt for the premium is tendered. Insurances are thus made every day, and if a fire should occur between the time the parol con-

tract of insurance was made and the policy was written out, the objection that upon one valid element of the contract, viz.: the premium, the minds of the parties had never met, would receive little favor. The universality of fire insurance, and the fact that rates are established for insurable risks, is a matter the court may take notice of, and assume that parties contracted with reference to it; what the rate may be for a particular risk is, however, matter of proof; the assumption is merely that the assurance has a value and that such value is susceptible of proof.

The authority of Mr. Richardson to make a valid contract by parol, in the manner and under the circumstances indicated in plaintiff's evidence is, I think, clear. He was the principal clerk of the company, and his duties were to receive applications, fill out policies and renewals, mark risks for surveyors, and "generally attend to whatever is transacted behind the counter;" when policies are filled out they are submitted to the president and officers. This application was made to Mr. Richardson while he was behind the counter at the office of the company; he was in their employ to receive just such applications; if he assumed to do more than his authority warranted, and give applicants assurance that the risks they presented were accepted, and sent them away with the impression that they had secured insurance against loss, it is manifest that the company and not the applicant should suffer from the assumption of power. The latter was not bound to know that the person authorized to receive applications, and "generally attend to whatever is transacted behind the counter," was not authorized to agree with him for assurance. The general agent of a company may delegate to his clerk his power, which is the whole power of the company (*Bodine* v. *Exchange F. Ins. Co.*, 51 N. Y. 117), and the company may do the same thing, and delegate its powers to whichever of its employees it pleases to place in its office to transact its business there; and if it may invest such employee with power it may equally clothe him with an apparent authority, and will be liable to all persons dealing with him in reliance thereon. It should be borne in mind that in the

Cooke v. Ætna Insurance Co. of New York.

case at bar Mr. Richardson does not testify that he did *not* have power to contract.

The defendant offered evidence to show that the risk was increased by removal of the property to Brooklyn ; this was properly excluded. The risk, whatever it was, had been accepted by the new contract; the insurance on the property in Brooklyn was exactly what was contemplated. No offer was made to show that the insurance was avoided by reason of the breach of any covenants in the old policy, which expressed the conditions of the new agreement.

The thing to be insured within the agreement of the parties was, however, the property named in the original policy ; this included certain machinery insured for $800, certain furniture insured for $100, and stock finished, unfinished and in process, and merchandise, *i. e.*, the shifting stock and material of a factory. The insured machinery to manufacture goods was taken to the Williamsburgh building, and as the process of manufacturing was to proceed where the machinery was, the agreement must be construed to extend to stock finished, unfinished and in process at the place of manufacture, which was now in Williamsburgh, as it had formerly been in Chambers street. But only one article (of the value of $10) of the second class of insured articles (furniture) was removed to Williamsburgh, and thus became covered by the new insurance. The recovery was therefore too great by $90 and interest.

This deduction must be made, therefore, and the judgment for the residue affirmed. No costs of this appeal.

CHARLES P. DALY, Ch. J., and VAN HOESEN, J., concurred.

Judgment reduced in the sum of $90, and affirmed as to residue without costs of appeal.