[Filed April 30, 1891.]

## G. T. HARDWICK *v.* STATE INSURANCE CO.

INSURABLE INTEREST — PLEADING — EVIDENCE. — A contract of insurance is one of indemnity only, and therefore in an action upon such a contract to recover for a loss arising thereunder, the plaintiff must allege and prove that he had an insurable interest in the property damaged or destroyed, not only at the making of the contract, but also at the time of the loss.

DEPENDENT COVENANTS — PERFORMANCE — TENDER. — Where by an oral contract for insurance it was agreed that upon delivery to him of a written policy thereafter to be issued, the insured should pay a certain amount of money as premium, he must allege and prove payment or tender of the premium before he can maintain an action for recovery of a loss under the contract.

INSURANCE AGENT — SCOPE OF AUTHORITY. — An insurance company establishing a local agency is as responsible to the parties with whom it transacts business for the acts and declarations of the agent within the scope of his real or apparent authority, as if they proceeded directly from the principal.

Yamhill county: R. P. BOISE, Judge.

Defendant appeals. Reversed.

This is an action to recover the sum of one thousand dollars on a preliminary oral contract for insurance alleged to have been made by defendant. The complaint in substance alleges that on March 6, 1889, defendant executed and delivered to plaintiff its certain policy by which it agreed to and did insure against loss by fire for the term of three years from that date the following described property, to wit: "On plaintiff's dwelling or residence, $700; on beds and

bedding while in said house, $200; on household furniture in said house, the sum of $100"; that at the time of the delivery of the policy the plaintiff paid defendant $5 in cash, and delivered to it his notes for the balance of premium to be paid on the policy, to wit, $25; that afterwards some question or dispute arose in regard to the validity of the policy, on the grounds that the property was described as a dwelling-house or residence, when in fact it was a hotel or boarding-house; that the dispute was finally settled as follows:   The plaintiff agreed, through the agent of defendant at Newberg, Oregon, viz: N. C. Maris, to surrender up the said policy for cancellation, and to make application through said agent for a new policy for the term of one year, and to pay as a premium thereon, $44 in addition to the $5 already paid, and defendant was to surrender to plaintiff the notes executed by him for cancellation; that pursuant to said agreement, plaintiff did surrender up said policy, and on the 20th day of July, 1889, made an application for a new one, which was received and agreed to by defendant's agent with the agreement on his part that the new policy should be executed and delivered as soon as could conveniently be done, and the additional premium of $44 should be paid on the delivery of the policy; that it was agreed that inasmuch as it would take some time to execute and return the new policy from Salem, the principal office of defendant, the insurance should commence on the 20th day of July, 1889, at the hour of 12 o'clock M., and in case said property should be destroyed by fire before said policy could be delivered to plaintiff, the sum of $1,000, the amount thereof, was to be paid as though it had already been delivered, and the policy was to run from said date instead of the actual day of its execution or delivery; that owing to the sickness of defendant's agent who received the application, the policy was not written out, executed or delivered to plaintiff; that on August 18, 1889, the property was destroyed by fire, and defendant refuses to execute or deliver the policy as agreed to, and refused to pay for

said loss.  A general demurrer was filed to the complaint, which, being overruled, defendant answered.  The answer admits the execution of the first policy, but denies *in toto* everything in the complaint relating to the alleged contract to insure the property by a second or new policy, and affirmatively alleges that Maris had no authority to make any contract or agreement for or on behalf of defendant, which plaintiff well knew.  A trial resulted in a verdict and judgment in favor of plaintiff for the sum of $1,000, from which this appeal is taken.

*Geo. H. Burnett,* and *W. W. Thayer,* for Appellant.

*H. Hurley,* and *James McCain,* for Respondent.

BEAN, J.— It is contended by appellant that the complaint does not state facts sufficient to constitute a cause of action, because (1) it does not allege that the plaintiff had any insurable interest in the property at the time of the loss; (2) it appears that both parties contemplated an agreement in writing which was never executed, and (3) it is not alleged that plaintiff either paid or tendered the premium agreed upon for the second policy.  The rule is well settled that in fire insurance the assured must have an insurable interest in the property both at the time of the insurance and at the time of the loss.  In the case of *Ruse* v. *Mutual Benefit Life Insurance Co.* 23 N. Y. 516, it was distinctly enunciated that a policy obtained by a party who has no interest in the subject of insurance, is a mere wager policy.  It was said in that case, that aside from authority this question would seem easy of solution.  Such policies, if valid, not only afford facilities for a demoralizing system of gaming, but furnish strong temptations to the party insured to bring about the event insured against.

In respect to insurances against fire, the obvious temptation presented by a wagering policy for the commission of the crime of arson, has generally led the courts to hold such policies void.  The contract of insurance is one of indemnity only, and unless the plaintiff has an insurable interest in the property at the time of the loss, he cannot be injured in

any way. (*Howard* v. *Albany Ins. Co.* 3 Denio, 301; *Murdock* v. *Chenango Ins. Co.* 2 Comst. 210.) The plaintiff's right to maintain this action depending upon his having an insurable interest in the property at the time of the loss, it follows that his complaint must contain an averment of such interest in order to state a cause of action. (*Freeman* v. *Fulton Life Ins. Co.* 14 Abb. Pr. 398; *Fowler* v. *The N. Y. Indemnity Ins. Co.* 26 N. Y. 422; *Quarrier* v. *Peabody Ins. Co.* 10 West Va. 507, 27 Am. Rep. 582.) In *Chrisman* v. *State Ins. Co.* 16 Or. 283, it was held by this court that the plaintiff's interest in the property insured being one of the essential facts upon which his right of recovery depends in an action founded on a policy against damage by fire, such interest must be alleged in the complaint. In that case, the question was raised on a motion of the defendant for judgment, notwithstanding the verdict, and the court held the objection fatal. The complaint before us fails to allege that plaintiff had any interest in the property destroyed, either at the time the insurance is alleged to have been effected or at the time of the loss. Nor is there any sufficient allegation of an insurable interest at the time the first policy was issued. The allegation that defendant insured his dwelling-house or residence is an insufficient allegation of this interest, and the more obviously so as it is not alleged even in this way that the beds and bedding and household furniture in the house which were also insured were his. It is not averred, either directly or indirectly, that on July 20, 1889, at the time the contract upon which this action is founded is alleged to have been made, plaintiff had any interest in the property whatever, nor that he had any interest at the time of the loss. Without these allegations the complaint fails to state a cause of action. The decisions, as far as we have been able to ascertain, without exception sustain the position that in cases of this kind the complaint must distinctly allege an insurable interest when the policy is taken out, and also when the property was damaged by fire.

The next objection made to the complaint is that it

appears that both parties contemplated an agreement in writing which was never executed, and hence it is argued there was no contract. We do not understand this action to be based upon an oral contract of insurance, but upon an alleged preliminary oral contract, by which it was agreed that defendant should insure plaintiff upon the property for one year for the sum and at the rate agreed upon from the time of making the contract, and that a policy should thereafter be made out by the defendant company at its home office, to take effect from that time. That such a contract is valid and binding on an insurance company, when made within the real or apparent scope of the agent's authority, has been too often decided to leave it an open question. Thus in *City of Davenport* v. *Ins. Co.* 17 Iowa, 276, an agreement of insurance was entered into between the parties by their agents on the 20th day of March, the insurance to date from noon of that day, the policy to be executed and delivered the next day. On the night of the same day the property was destroyed by fire. On the morning of the 21st the policy was executed and delivered and received in perfect accord with the agreement, both parties being ignorant of the fire; held, that the company was liable for the loss. So, in *Audubon* v. *Excelsior Ins. Co.* 27 N. Y. 216, it appeared that plaintiffs sent certain of their engravings to a bookbinder on Saturday to be bound, and in the afternoon of the same day sent their agent to defendant's office to effect an insurance on them at a valuation of $1,500 for one month. It appeared that on January 10th preceding, the defendants by an ordinary policy had insured plaintiff on certain sets of the same work at the same bindery for one month at a valuation of $1,000, the premium being at the rate of 30 cents per $100; that when plaintiff's agent applied to defendant's secretary for the insurance and asked him if defendant would insure the property, the secretary replied, "We will," and agreed that the policy would be sent to plaintiffs on the following Monday. The engravings were burned on the following Sunday, and defendant refused to issue or deliver the policy; held, that

the insurance took effect from the date of the oral application, and the company was liable for the loss, notwithstanding no definite agreement was made as to the premium.

So in *Fish* v. *Cottenet,* 44 N. Y. 538, 4 Am. Rep. 715, it appeared that on October 20, 1864, the plaintiff applied to Wilber, as agent of defendant, to insure him upon brewery buildings against loss and damage by fire to the amount of $5,000; and it was there verbally agreed between the plaintiff and Wilber, who assumed to act in behalf of the company, that the company, from that time forth, and for the space of one year therefrom, would insure the plaintiff upon the brewery buildings against loss and damage by fire in the sum of $5,000, and would deliver its policy of insurance accordingly, and that when requested plaintiff would pay the premium. The plaintiff after this frequently called upon Wilber to get the policy, and upon each and every occasion Wilber said the policy had not yet come, but that it would come; that he need not give himself any trouble about it; and that he was just as much insured as if he had the policy. The plaintiff acted in good faith and relied upon the agreements and statements of Wilber. On January 24, 1865, the buildings were destroyed by fire; held that defendants were liable for the loss, although no policy of insurance upon the buildings was ever delivered by the company to the plaintiff; nor was the premium ever demanded or paid; nor did Wilber ever communicate to the company the application of the plaintiff for insurance, nor the agreement made with him.

In *Angell* v. *Hartford Ins. Co.* 59 N. Y. 171, 17 Am. Rep. 322, the plaintiff entered into an agreement with the agent of the defendant company to insure his building for $1,000 for three years, for the sum of $30, and to make out and deliver a policy, the premium to be paid when the policy was delivered. The agent did not make out the policy, and the premises having been destroyed by fire, the plaintiff tendered the premium and demanded the policy. The defendant refused to execute or deliver the policy, and an action was brought to recover for the breach of the contract to insure, and the court held

the company liable.   GROVER, J., in delivering the opinion of the court, said:   "The counsel for the appellant is mistaken in supposing the action based upon an oral contract of insurance for three years.   There was not sufficient evidence to show that Carpenter was authorized to make such a contract for the defendant.   It was alleged in the complaint, and the evidence tended to prove, that a preliminary contract was made by which it was agreed that the defendant should insure the plaintiff upon the property against damage by fire for a sum and at a rate agreed upon, for the term of three years from the time of making the contract, and that a policy should shortly thereafter be made out, to take effect from that time."   Without stopping to quote from other authorities upon this question, it is safe to say that in all cases where parol contracts of this kind are not prohibited by statute, a parol contract of insurance is valid and binding, as well as parol contracts to effect an insurance by issuing policies; and the latter class of contracts will be enforced by compelling specific performance by the company, or in an action for the breach of the agreement; in either of which, a recovery for a loss of the property agreed to be insured will be awarded the plaintiff.   (*Ellis* v. *Albany Fire Ins. Co.* 50 N. Y. 402, 10 Am. Rep. 495; *Angell* v. *Hartford Ins. Co.* 59 N. Y. 171, 17 Am. Rep. 322; May on Ins. § 565.)   In such case the risk attaches from the date of the application, or from the time designated as the commencement of the risk, and the only effect that can be given to the additional promise to execute a written policy is, that upon the tender of such a policy and a demand of the premium, the oral contract should cease. (1 Wood on Ins. § 4; *Kelly* v. *Ins. Co.* 10 Bos. 82; *Relief Fire Ins. Co.* v. *Shaw,* 94 U. S. 574; *Sanborn* v. *Fireman's Ins. Co.* 16 Gray, 448, 77 Am. Dec. 419; *Baptist Church* v. *Brooklyn Ins. Co.* 19 N. Y. 305; *King* v. *Hekla Ins. Co.* 58 Wis. 508; *Putnam* v. *Home Ins. Co.* 123 Mass. 324, 25 Am. Rep. 93.)

That contracts of insurance are not usually made in this way, is no evidence that they cannot be so made.   As was said by COMSTOCK, J., in *Baptist Church* v. *Brooklyn Ins. Co.,*

*supra:* "There is nothing in the nature of insurance which requires written evidence of the contract. To deny, therefore, that parol agreements to insure are valid, would be simply to affirm the incapacity of parties to contract where no such incapacity exists, according to any known rule of reason or of law." It seems now well settled that if an application is made for insurance, whether in writing or by parol, and the risk is accepted, the contract is complete, and the risk attaches from the date of the application or from the time designated as the commencement of the risk, and the company would be liable for loss, if it occurred after that and before the contract was consummated by the formal execution and delivery of the policy. (4 Field's Lawyers' Briefs, 245; 1 Wood on Fire Ins. § 20.)

The next objection to the complaint is that it is not alleged that plaintiff paid or tendered the premium agreed to be paid, and it is contended that the payment or tender of the premium by him is a condition precedent to his right to recover. From an examination of the cases heretofore cited where actions have been brought and sustained on preliminary parol contracts to insure, it will be seen that in nearly all of them the premium was not paid or tendered until after the loss, when the premium was tendered and the policy demanded. It is not considered essential, unless expressly required by the agent, that the premium should be paid at the time the oral contract is entered into in order to constitute a valid contract to insure. "The rule is," says Mr. WOOD, "that in case of a mere oral contract of insurance, supported by a sufficient consideration, which is to take effect forthwith, although it may be entered into contemporaneously with an agreement by the insurer to deliver, and the assured to accept subsequently as a substitute therefor, a written policy by the former, in the form usually adopted by them, becomes binding and remains in force until the delivery or tender of such policy. Until then, the condition usually inserted in such policies, requiring prepayment of the premium to make them binding, unless

expressly adopted by the parties in such oral contract, forms no part of the insurance between them.   A mere demand of the premium without insisting upon it or tendering a valid policy, does not terminate the oral insurance." ( 1 Wood on Ins. § 30.)   In a leading case upon this question a defective policy was issued and delivered to plaintiff after a loss had occurred and the premium was paid.   The plaintiff, admitting that the policy was invalid, brought an action upon the oral contract.   The defendant denied its liability under the oral contract because the premium was not paid until after the loss, when the policy required it to be paid before the risk attached.   The action was upheld and a recovery permitted under the oral contract.   ROBERTSON, J., speaking on this question, said:   "The defendants at the time [of the loss] could have sued him [plaintiff] for the premium and recovered; there was no reason why they should not be equally held for the insurance unless upon a tender of the policy and a peremptory demand by them for the premium the plaintiffs had refused to pay it.   *   *   *   It is clear that for such premium the defendants intended to have taken the risk; they had a right to stop the credit for the premium and the oral contract by presenting a perfect policy and demanding the former.   They did not exercise the right, and when a loss occurred they seek to evade it." (*Kelly* v. *Commonwealth Ins. Co.* 10 Bos. 82.)   See also opinion of DENIO, J., in *Audubon* v. *Excelsior Ins. Co., supra,* in which he says:   "It is true that in this case the consideration was not paid, but the owners of the property were ready to pay it when the policy should be delivered.   In the meantime it was a debt against the owners for which credit was given until delivery of the policy."   The current of decisions seems to be that the premium is not payable unless expressly made so by the contract until the policy issues, and then the assured must accept the policy and pay the premium. (*Davenport* v. *Peoria Ins. Co., supra; Hamilton* v. *Lycoming Ins. Co.* 5 Pa. St. 339; *N. E. Ins. Co.* v. *Robinson,* 25 Ind. 536.) It follows, therefore, that plaintiff was not compelled to pay

or tender the premium before the loss in order to recover, but since this is an action to recover damages for the breach of an alleged oral contract by which it was agreed that defendant should insure the plaintiff's property, from the time of making the contract, and that a policy should thereafter be issued by defendant, to take effect from that time, it necessarily follows that before plaintiff can recover for such breach he must allege and prove performance or an offer of performance of the contract on his part. The payment of the premium was by the contract a condition precedent to his right to the policy. There could be no breach of the contract on the part of the defendant until payment or tender of the premium by plaintiff. The delivery of the policy and payment of the premium were to be concurrent acts, and neither party could insist upon performance by the other without performance or an offer to perform on his part. The defendant had no right to demand the premium until it tendered the policy, nor the plaintiff the policy until he paid or tendered the premium, and hence there could be no breach of the contract by defendant until such payment or tender. The complaint fails to allege the tender or payment of the premium by plaintiff, or any facts which will excuse a tender, and hence does not show a breach of the contract by the defendant or state a cause of action.

From the views already expressed, the case must be reversed, but the probability of another trial renders it important that we examine the other assignments of error. In the ruling of the court sustaining the motion to strike out that portion of the answer alleging that the action was not commenced within six months after loss, and in refusing to give the instruction asked by defendant to the same effect, there was no error. This action is not based upon the terms of any policy, but upon the breach of a contract. Although plaintiff testified that the policy to be issued was to be in terms the same as the former one, except as to length of time and amount of premium, defendant refused to issue or deliver the policy according to contract, and hence this

action.   Having failed to issue the policy, it can claim no exemption from liability on account of any provisions the policy might or would have contained had it been issued. The other errors alleged are in giving and refusing certain instructions.    In order to a correct understanding of the questions involved, a brief reference to some of the facts is necessary.

About July 1, 1889, plaintiff ascertained from agents of other insurance companies that there was some doubt about the validity of the policy issued by defendant in March, because the building was described as a dwelling, when in fact it was a hotel or boarding house.   He applied to Maris, defendant's agent at Newberg, for information about the matter, and was told that the policy was not valid and the company would not continue the risk.   He then told Maris that he would like to cancel the policy and get his notes back, and Maris said he would write to the company about the matter.   Maris was the defendant's agent at Newberg, with an office and sign out as agent of the State Insurance Company.   The evidence tended to show that he was engaged in soliciting insurance, delivering policies, taking applications for insurance, collecting and remitting money, and doing other business in relation to insurance, and generally holding himself out as the agent of defendant; that by his commission of appointment he was given "authority to solicit and receive applications for insurance on such property in such amounts and at such rates as are permitted by the rules and instructions furnished by the company, and not otherwise, and to receive and transmit the premium therefor," but there was no evidence that plaintiff had any knowledge of this commission or of any limitation on Maris' authority, except that he did not write policies, but he supposed Maris was the general agent of defendant.   In accordance with his understanding with plaintiff, Maris wrote to defendant, inclosing a diagram of the property, and in reply received a letter giving the terms upon which the old policy would be canceled, and also the terms upon which a new

one would issue.   On July 20, Maris called upon plaintiff and showed him the letter, and plaintiff agreed to cancel the old policy and take out a new one on the terms stated in the letter, and did surrender up the old policy to Maris. The details of the contract or agreement between Maris and plaintiff were questions of fact for the jury, and are not necessary for us to consider further than stated.

On the trial in the court below the defendant denied the authority of Maris to make the contract sued on, and this was one of the principal issues in the case.   On this question the court instructed the jury that "as to whether or not Maris made the contract sued on, and whether he had authority to make it, if made, are questions of fact for the jury to determine from the evidence."   Considered by itself, this instruction is not strictly correct.   The scope of an agent's authority is not wholly a question of fact, but one of law and fact.   (2 Wood on Ins. 870.)   But this instruction must be construed in connection with the entire charge of the court, and viewed in that connection we think it is unobjectionable.   The jury was instructed fully, and in the absence of objection we must assume correctly, as to the law of agency applicable to the facts of this case.   The detached portion of the charge objected to, was in effect saying to the jury that whether Maris had authority under the law as given to you to make the contract sued on, if made at all, is a question of fact for you to determine from the evidence, and in this we think there was no error.   The defendant requested the court to instruct the jury: "If Mr. Maris, as agent of the defendant, only had authority to receive applications for insurance and transmit them to the defendant at its home office and collect the premium, and was the medium through which policies were delivered to parties insured, the plaintiff would not, upon these facts, be justified in treating him as having authority to make contracts of insurance binding upon the company, because the very fact that the application is required to be made and forwarded to the company is notice that the defendant

reserves the right to judge and determine for itself whether or not the risk shall be taken." This request may be conceded to be good law, but as applied to the facts of this case we think it was properly refused. As we read the record, plaintiff claims that he had no knowlede of the limitation on the powers of Maris, nor that his duties were only to receive applications for insurance and forward them to the home office. It is true, plaintiff knew perhaps that Maris did not write policies, but that he knew the reason does not appear. Maris was not the agent through whom the first policy was secured, and therefore plaintiff obtained no information as to Maris' authority in that way. Maris was acting as defendant's agent. To him plaintiff applied for information concerning the validity of the first policy. Maris wrote to the company, stating the facts, and received a reply giving the terms upon which it would cancel the old policy and issue the new one. Armed with this letter, Maris sought plaintiff, and he agreed to accept the terms and surrender up the old policy, and, as he claims, Maris made the contract sued upon. The terms were those proposed by the company itself, and it would no doubt have issued the policy to take effect from the date of application if the illness of Maris had not prevented him from making out and forwarding the formal application, according to understanding with plaintiff. In the absence of notice to plaintiff of any limitation to Maris' authority, or of facts amounting to notice, we think it was a question of fact for the jury, under proper instructions from the court, as to whether plaintiff had a right to assume that Maris had authority to make the contract sued on, if he did make it, and the request under consideration entirely withdrew this question from the jury. (2 Wood, § 423; *Putnam* v. *Home Ins. Co.* 123 Mass. 324, 25 Am. Rep. 93; *Palm* v. *Medina Fire Ins. Co.* 20 Ohio, 529; *Cooke* v. *Ins. Co.* 7 Daly, 555; *Ellis* v. *Albany Fire Ins. Co.* 50 N. Y. 402, 10 Am. Rep. 495.)

Where insurance companies deal with the community through a local agency, persons having transactions with

the company are entitled to assume, in the absence of knowledge as to the agent's authority, that the acts and declarations of the agent are as valid as if they proceeded directly from the company. (2 Am. Lead. Cas. 922; *Ins. Co. v. Wilkinson,* 13 Wall. 222.) And a person who is clothed with power to act for them at all, is treated as clothed with authority to bind them as to all matters within the scope of his real or apparent authority, and persons dealing with him in that capacity are not bound to go beyond the apparent authority conferred upon him and inquire whether in fact he is authorized to do a particular act. It is enough if the act is within the scope of his apparent authority. (2 Wood, § 408.) In *Insurance Co.* v. *Wilkinson, supra,* Mr. Justice MILLER, in speaking on this question, uses the following appropriate and very apt language: "The agents are stimulated by letters and instructions to activity in procuring contracts, and the party who is in this manner induced to take out a policy rarely sees or knows anything about the company or its officers by whom it is issued, but looks to and relies upon the agent who persuaded him to effect insurance as the full and complete representative of the company in all that is said and done in making the contract. Has he not a right to so regard him? It is quite true that the reports of judicial decisions are filled with the efforts of these companies, by their counsel, to establish the doctrine that they can do all this, and yet limit their responsibility for the acts of these agents to the simple receipt of the premium and delivery of the policy. This proposition is not without support in some of the earlier decisions on the subject; and, at a time when insurance companies waited for parties to come to them seeking assurance, or to forward applications on their own motion, the doctrine had a reasonable foundation to rest upon. But to apply such a doctrine, in its full force, to the system of selling policies through agents, which we have described, would be a snare and a delusion, leading, as it has done in numerous instances, to the grossest frauds, of which the insurance companies receive

the benefits, and the parties supposing themselves to be insured are the victims." This rule proceeds upon the theory that if any party is to suffer by reason of the wrong-doing of such agent, it should be the company who clothed him with apparent authority and for whom he was acting, rather than the assured, who acted in good faith and innocently became a party to the contract. The public regard such persons as agents clothed with authority to make contracts of insurance, and the companies certainly are aware of that fact. They must be held responsible for the acts of such agents within the scope of the business intrusted to them, and cannot limit their liability by any secret limitations or instructions, not known to the party dealing with the agents. (*City of Davenport* v. *Ins. Co.* 17 Iowa, 276; *Life Ins. Co.* v. *Mc-Gowan*, 18 Kan. 300; *Ellis* v. *Albany Ins. Co.* 50 N. Y. 402, 10 Am. Rep. 495; *Palm* v. *Medina Fire Ins. Co.* 20 Ohio, 529.)

An insurance company which clothes a person with authority to hold himself out to the community as its local agent with authority to effect insurance, is bound by the acts of the agent, within the apparent scope of his authority. This authority need not be expressed, but may be implied from circumstances, and may thus exist as to third parties, although not as between the agent and the company. As said by Mr. Justice MILLER, in *Ins. Co.* v. *Wilkinson, supra,* "the powers of the agent are *prima facie* co-extensive with the business intrusted to him, and will not be narrowed by limitations not communicated to the person with whom he deals. An insurance company establishing a local agency must be held responsible to the parties with whom it transacts business for the acts and declarations of the agent, within the scope of his employment, as if they proceeded from the principal." The decided tendency of the recent decisions, and we think properly, is to hold the insurer bound by the acts and conduct of the local agent whenever it can be done consistently with the rules of law. Such local agent is expected, both by the company and the assured, to receive applications, to examine the premises, determine the character

of the risk, agree upon the amount to be insured, and premium, and in fact to represent the company in the matter of effecting the insurance.   He is the only person, from the nature of the case, who can be presumed to have information necessary to act for the company, and is the only person with whom the party applying has anything to do.   His principal is usually remotely located.   Its patrons in his vicinity naturally look to him for direction generally as to the insurance obtained through him; and persons insured in his company, with few if any exceptions, would in the absence of notice that his powers were limited, regard his statements or contract as to any matter relative to such insurance as authoritative and binding upon the company. They look to the agent through whom they have obtained insurance as the complete representative of the company in everything connected with that insurance.   If they did not have a right to so consider the authority of the local agent, it would undoubtedly create distrust and cripple the business, and contracts of insurance would in many instances prove a snare and a delusion and a fraud of the grossest kind, of which the supposed assured would be the victim.   The fact that the agent may not have authority to issue the policy, which is simply the written evidence of the contract, does not of itself prevent him from making a valid preliminary oral contract to insure; and it is said in such cases the courts will take judicial notice of the usage to make such contracts date from the application. (*Palm* v. *Medina Ins. Co.* 20 Ohio, 529; *Fish* v. *Cottenet,* 44 N. Y. 538, 4 Am. Rep. 715; *Ellis* v. *Ins. Co.* 50 N. Y. 402, 10 Am. Rep. 495; *Post* v. *Ins. Co.* 43 Barb. 351; *Sanborn* v. *Ins. Co.* 16 Gray, 448, 77 Am. Dec. 419.)   Where the authority of an agent is limited, and the person with whom he contracts has notice of such limitation, of course the principal is not bound beyond the agent's authority, but whether plaintiff in this case had notice of the limitation on Maris' authority was a question of fact for the jury.

The other instruction, the refusal of which is assigned as

error, was we think substantially given by the court in paragraph six.

The judgment will be reversed and a new trial ordered.