(No. 5947. June 29, 1933.)

LONNIE BALES, Respondent, v. GENERAL INSURANCE COMPANY OF AMERICA, Appellant.

[24 Pac. (2d) 57.]

Cox, Martin & Ware, for Appellant.

A. S. Hardy, for Respondent.

MORGAN, J.—This is an action for damages based on the negligence of appellant's agent whereby he failed to execute an agreement to renew a policy of insurance on respondent's oats, which negligence and failure resulted in the grain being uninsured when it was destroyed by fire. The case was tried to the court, without a jury, and resulted in judgment for plaintiff, from which this appeal is prosecuted.

Respondent moved to dismiss the appeal because of delay in serving the transcript. Two copies of the transcript were received by counsel for appellant, who reside in Lewiston, from the clerk of the district court, on October 29, 1932, and they promptly sent one copy, by express, to respondent's counsel, who resides in Grangeville. The express company attempted to deliver the copy to respondent's counsel at his office, but found the door locked and left it near the door, in such position that one going into or coming out of the office would be sure to find it. Counsel for respondent neither admits nor denies that he received this copy, but insists that the service was so defective as to be void. When the foregoing facts were discovered by counsel for appellant, a member of that firm immediately took their copy from Lewiston to Grangeville and served it on counsel for re-

spondent by delivering it to him, personally, January 16, 1933.

No showing is made that the rights of respondent have been in any way prejudiced by the delay, and the motion to dismiss the appeal is denied. (*Clayton v. Barnes,* 52 Ida. 418, 16 Pac. (2d) 1056; *Idaho State Merchants Protective Assn. v. Roche, ante,* p. 115, 22 Pac. (2d) 136.

In 1928 A. C. Chace, who was cashier of Cottonwood State Bank, which had the agency for a number of insurance companies, solicited the business of insuring respondent's personal property. The conversation between Chace and respondent resulted in an agreement whereby the former was authorized to write insurance on personal property of the latter, including grain grown on his ranch near Ferdinand. In this conversation Chace promised he would renew the insurance when a policy expired, without notice or request so to do, and respondent promised he would pay the premiums on such renewals on demand. This agreement was kept and performed by the parties until December 31, 1930, and the policies written were not delivered to appellant but were retained by Chace in the bank. The policy which expired December 31, 1930, covered 158,300 pounds of oats in Vollmer-Clearwater Company warehouse, at Ferdinand, insured for and of the value of $1,580, together with other grain in another warehouse. Chace, through negligence, failed to renew this insurance, and April 17, 1931, the Vollmer-Clearwater Company warehouse was burned, and the oats were destroyed without insurance.

Appellant insists the parties to the agreement to renew the policy are indefinite in that the insurer was not agreed on. It is true that, at the first conversation between respondent and Chace with respect to the insurance, in 1928, which resulted in a course of business conduct whereby respondent's grain was insured by appellant, the company which was to carry the risk and receive the premium was not mentioned, and the selection of the insurer was left to Chace. From the companies the bank represented, he selected appellant as the insurer of the grain, and respondent

did not know the identity of the insurer until the first policy had been written. Subsequently the oats in question were insured by a policy issued by appellant, and it was the duty of Chace, as its agent, to renew it when it expired. This leaves no uncertainty as to the identity of the insurer.

Appellant further insists the contract is void because it lacks mutuality in that, according to its terms, respondent might sell his insured grain and thereby terminate the agreement to keep it insured. If respondent sold the grain he would no longer have an insurable interest in it and the insurance would terminate and release appellant from liability. (*Hardwick v. State Ins. Co.*, 20 Or. 547, 26 Pac. 840.) The agreement was that Chace, as agent for appellant, would renew the insurance when it expired and respondent would pay the premium on demand. The contract does not lack mutuality.

It is urged the contract is void because the identity of the property to be insured was indefinite, and appellant's counsel state "the record fails to show that there was any agreement whatsoever between the respondent and Chace, acting as the agent of appellant company, that the appellant company was to issue a policy for the period last mentioned which should *cover the oats and omit the wheat*. Respondent wholly fails to show such agreement. Chace's testimony on this point is conclusive."

The policy which was to be renewed covered oats in one warehouse and wheat in another. We do not understand respondent's contention to be that the wheat was not to be included in the renewal policy. It is true the value of the wheat is not included in this action, but that is due to the fact that it was not destroyed.

The property to be insured was definite. The grain, wheat and oats were already insured and the agreement was, in effect, that upon the expiration of the policy it was to be renewed to cover any portion of the grain which respondent owned at that time. The record shows a course of dealing whereby Chace sometimes prepared the renewals from information given him by respondent and on one occasion, at

least, he applied for and got the information at the warehouse where the grain was stored. By following either course the quantity of grain to be insured in the renewal policy could readily be ascertained.

▇ Appellant contends the contract is void because indefinite as to the time the property was to be insured, and says: "Respondent pleads that the agreement was to insure the oats in question *as long as the same were owned by respondent.*"

This action is for damages arising from the failure of appellant to fulfill its promise, made by its agent, to renew the insurance policy given to protect respondent from loss of his oats by fire, for a period of six months, pursuant to a course of business practice which had been followed by the parties since 1928, with one exception, when a policy was issued for a year. The time when the renewal policy was to take effect was definitely fixed at the time of expiration of the one then in force, and its duration is presumed to be six months, from the fact that the expiring policy was for six months and that six months was the customary period for these policies to run. Mr Chace testified:

"Q. These policies you have spoken of were all written in the General Insurance Company of America?

"A. Yes, sir.

"The Court: Mr. Chace, what would have been the date of the new policy if you had renewed that policy that expired before the fire?

"A. December 31, 1930.

"The Court: You would have dated it on the same date as the expiration of the previous policy?

"A. It might have been written a day or two ahead but it would be dated—

"The Court: It would be dated as of that date?

"A. Yes, sir.

"Q. (By Mr. Hardy.) Your custom in making grain policies was to renew them for how long a time, Mr. Chace?

"A. Well, it varies, but as a rule six months.

"Q. That is the general custom?

"A. Yes.

"Q. And these policies for Mr. Bales were written for six months?

"A. One of them was written for a year; that little one on the 1928 crop was written for a year.

"Q. All the rest of them were for six months?

"A. Yes, sir."

The date of the policy, agreed to be written, and its duration are definite and certain.

Appellant further contends that, while the complaint pleads an executory agreement to renew the insurance policy on the oats for the sum of $1,580, there is no evidence to support that allegation. The expiring policy was for $1,580 insurance on the oats and the parties agreed the insurance should be kept in force in the amount for which it was written until respondent, from time to time, notified Chace to change it. On this point respondent testified:

"Q. Then it was necessary for Mr. Chace to get certain information from you to know the amount for which the policy was to issue. Is that not true?

"A. Well, he would renew the policy for the same amount unless I had him to cut it down. I might have fed some of the wheat or sold some of it, and if I did, why, I notified him of the amount I had fed or sold, so he could deduct it from the policy."

Mr. Chace testified:

"A. Mr. Bales told me that Eimers & Graham had been handling his insurance for years, and he didn't have to bother with it; when a policy came up for renewal they renewed it, and he didn't have to bother with it; and I said: 'We will do the same thing over here.' And· we had a definite understanding between us that we were to keep his grain policies in force until he advised us to cancel them—

"Q. Cancel them or change them?

"A. And that is the basis we have been going on here ever since we got the first policy.

"Q. He advised you they were to be kept in force until he advised you to cancel or change them?

"A. Yes.

"Q. And the insurance at that time was written in the General Insurance Company of America?

"A. Yes, sir."

No instruction was given to make a change and the terms of the policy which was to be renewed are controlling.

It is urged the contract is void because there was no agreement to pay a definite premium. On this point respondent testified:

"Q. What was your custom about paying the premiums?

"A. Any time he (Mr. Chace) sent me a notice I gave him a check."

Mr. Chace testified:

"Q. At the time the premiums came due, what was your custom about collecting the premiums?

"A. When the time came to remit to the company for a policy we sent Mr. Bales notice and he would send us a check for the premiums."

It is said in *Orient Ins. Co. v. Wingfield,* 49 Tex. Civ. App. 202, 108 S. W. 788:

"When the contract is to renew a policy, and there is no evidence introducing new or additional terms, the presumption is that the renewal is for the same time, terms, amount, premium, and to cover the same property as the old policy."

Counsel for appellant argue that the purported agreement fails because it was not a completed contract *in praesenti,* and because essential elements were left to be completed by later negotiations. In their brief they say:

"The whole testimony submitted by respondent in support of the allegations of his complaint does not show that the agreement in 1928 was a completed agreement to insure."

Again we call attention that this is not an action on a contract of insurance, but is an action for damages growing out of the breach of a duty which appellant owed respondent to renew the insurance on his oats. This duty is shown, not alone by the conversation in 1928 between appellant's agent and respondent when the business relations of the parties commenced, but by their course of dealing with each

other from that time until the oats were destroyed. The record shows respondent repeatedly asked appellant's agent to be sure to keep the property insured, and that the agent answered he would do so. That the agent of appellant understood his duty in this regard is shown by his testimony and that of respondent. Mr. Chace testified:

"A. In 1929 there were so many fields to cover I had to write two policies to cover the crop. The numbers were ID 800879 and 800880.

"Q. And that covered these same oats?

"A. Oats and other grain, too.

"Q. Now, was that policy renewed again?

"A. The policy was renewed the 31st day of December, 1929.

"Q. And renewed again in June, 1930?

"A. Yes, sir.

"Q. And when did that expire?

"A. The 31st of December, 1930.

"Q. Now, why was it not renewed on December 31st, 1930?

"A. Because I forgot it.

"Q. It was understood between you and Mr. Bales that you should renew it, was it not?

"A. Yes, sir."

Respondent, speaking of being notified by Mr. Chace that the policy had not been renewed as agreed, testified:

"A. Well, I went into the Bank and he says: 'Lonnie you ought to shoot me; I let that oats policy lapse.' He says: 'I thought it was in force, but when I heard about the fire I was looking through the policies to see how many I had in the fire and I found I had let it lapse.' I says: 'You knew I thought it was insured.' And he says: 'Yes, and I thought it was insured.' "

It is clear appellant's agent knew what was expected of him; that no further negotiations were required, and that but for his negligence and forgetfulness the policy would have been issued.

 Appellant insists respondent cannot recover because the proof establishes Chace was his agent.

The dealings between the parties, disclosed by the record, will not justify holding Chace was respondent's agent. It is the duty of an insurance agent to prepare the policy and execute it, or cause it to be executed. In the performance of this duty he acts as the agent of the insurer, not of the insured. The failure to perform it in this case caused respondent to be without the protection of a policy of insurance when his oats were destroyed and rendered appellant liable for his resulting damage. (*Wallace v. Hartford Fire Ins. Co.*, 31 Ida. 481, 174 Pac. 1009; *Telford v. Bingham County Farmers Mutual Ins. Co.*, 52 Ida. 461, 16 Pac. (2d) 983; *Phoenix Ins. Co. v. Ireland*, 9 Kan. App. 644, 58 Pac. 1024; *Security Ins. Co. v. Cameron*, 85 Okl. 171, 205 Pac. 151, 27 A. L. R. 444; *McCabe v. Aetna Ins. Co.*, 9 N. D. 19, 81 N. W. 426, 47 L. R. A. 641.)

 Appellant further insists the contract relied on by respondent exceeds the authority of an insurance agent. It was stated during the trial by appellant's counsel that no contention was made that Chace was not authorized to act as its agent, and the following appears in its brief:

"There is no question on the authority of Chace, cashier of the Cottonwood State Bank, to bind the appellant by a *valid* contract of insurance. While he was not the designated agent, his authority was admitted because the agency of the appellant was owned by Chace's bank, and, although carried in the name of an individual for the convenience of the bank, Mr. Chace actually transacted the business of all the insurance companies represented by the bank. This admission, of course, *cannot be construed as giving Chace any authority greater than that of an ordinary insurance agent.*"

Therefore, we are proceeding upon the theory that Chace had the authority "of an ordinary insurance agent."

In *Hardwick v. State Ins. Co.*, 20 Or. 547, 26 Pac. 840, 844, it is said:

"Where insurance companies deal with the community through a local agency, persons having transactions with the company are entitled to assume, in the absence of knowledge as to the agent's authority, that the acts and declarations of

the agent are as valid as if they proceeded directly from the company. 2 Amer. Lead. Cas. 922; *Union Mutual Life Ins. Co. v. Wilkinson*, 13 Wall. 222 [20 L. ed. 617]. And a person who is clothed with power to act for them at all is treated as clothed with authority to bind them as to all matters within the scope of his real or apparent authority, and persons dealing with him in that capacity are not bound to go beyond the apparent authority conferred upon him, and inquire whether in fact he is authorized to do a particular act. It is enough if the act is within the scope of his apparent authority. 2 Wood, Ins., sec. 408, and authorities there cited.''

In agreeing to renew the insurance Chace acted within the scope of apparent authority of an insurance agent. (*Brown v. Home Ins. Co.*, 82 Kan. 442, 108 Pac. 824.)

We are urged to reverse the judgment on the theory that the agreement to renew the policy attempts to vary, by parol, a written contract. As stated in *Wallace v. Hartford Fire Ins. Co.*, 31 Ida. 481, 174 Pac. 1009:

''This is not to be confused with that class of cases wherein actions have been brought to recover, in whole or in part, indemnity provided for in contracts of insurance, executed or executory, written or unwritten, express or implied.''

Neither the agreement that the policy in force would be renewed at the date of its expiration, nor the testimony by which it was established, attempts to vary the terms of a written contract.

The judgment is affirmed. Costs are awarded to respondent.

Budge, C. J., and Givens, Holden and Wernette, JJ., concur.

Petition for rehearing withdrawn.