115 P.3d 751

**CASCADE AUTO GLASS, INC.,**
**Plaintiff–Appellant,**

v.

**IDAHO FARM BUREAU INSURANCE COMPANY, Defendant–Respondent.**

No. 30321.

Supreme Court of Idaho,
Boise, April 2005 Term.

June 17, 2005.

Baker & Harris, Blackfoot, and Livgard & Rabuse, P.L.L.P., Minneapolis, MN, for appellant. Charles J. Lloyd argued.

Merrill & Merrill, Chtd., Pocatello, for respondent. Stephen S. Dunn argued.

TROUT, Justice.

This is an appeal from an order granting summary judgment in favor of Farm Bureau Mutual Insurance Company of Idaho, Inc. (Farm Bureau) against Cascade Auto Glass, Inc. (Cascade), in an action seeking payments, in excess of those previously made by Farm Bureau, for glass repair and replacement services provided by Cascade to Farm Bureau insureds at various locations in Idaho. The issues presented require an interpretation of the insurance policy language and a determination of whether Farm Bureau met its obligations under the insurance contract.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The Farm Bureau policies at issue here generally provide coverage for the repair or replacement of accidental glass breakage on the insureds' vehicles. Each Farm Bureau policy states the amount Farm Bureau is obligated to pay for glass repair or replacement claims. Reduced to its essential language, the applicable policy provision in dispute (described as "Coverage S") states:

Our limit of liability under [the comprehensive coverage in the policy governing automobile glass] . . . is:

. . . (2) The cost of repair or replacement using parts of like kind and quality . . . The cost of repair or replacement is based on the cost of repair agreed upon by us or an estimate written based upon the prevailing competitive price. The prevailing competitive price means labor rates, parts, and material prices charged by a substantial number of repair facilities in the area where the insured vehicle is to be repaired.

Pursuant to the policy language quoted above, Farm Bureau establishes the prices it agrees to pay for various glass repair and replacement services in each geographic area in which its insureds receive that service, which prices change from time to time. Each time the prices change, Farm Bureau provides notice of its newly established prices by having its third-party glass claims

administrator send a letter to the glass shops, which clearly states the prices Farm Bureau agrees to pay for glass repair or replacement services. Farm Bureau pays all glass shops within the same geographical area at the same rate. Cascade has acknowledged receiving all such letters.

Cascade is a glass replacement and repair company providing people with glass services, some of whom are insured by Farm Bureau. In each instance that Cascade performed a service for a Farm Bureau insured, in lieu of payment for the work from the insured, Cascade obtained an assignment of proceeds in order to receive the money directly from Farm Bureau. After completing the work and receiving the executed assignment, Cascade then submitted its invoices directly to Farm Bureau or one of Farm Bureau's authorized third-party claims processors for processing. At this point, a check was normally sent to Cascade, in the amount Farm Bureau had previously agreed to pay for the services. Cascade routinely submitted invoices for amounts higher than what Farm Bureau had said it would pay. When this occurred, Farm Bureau had the invoice audited and simply made payment to Cascade in the lower amount provided for in the Farm Bureau notices.

Cascade brought an action against Farm Bureau for breach of contract, contending that on over 1,700 submitted invoices, Farm Bureau failed to pay the total amounts due Cascade under the insurance contract which amounted to $257,379.61. The essence of Cascade's complaint is that Cascade provided Farm Bureau's insureds quality glass repair or replacement services with "parts of like kind and quality" and submitted fair and reasonable invoices representing their cost for such services; therefore, Farm Bureau's obligation under the insurance contract was to pay Cascade the full amount of the invoice, without regard to Farm Bureau's determination and notification of what it was willing to pay.

Farm Bureau brought a motion for summary judgment, claiming that Cascade lacked standing to assert these claims and that Farm Bureau had already paid all amounts it was obligated to pay under the insurance policies. As to standing, for 1,647 of the 1,706 invoices in dispute, the district court held that Cascade had standing and could properly assert its claims against Farm Bureau. The court then granted Farm Bureau summary judgment on the remaining issue, finding that Farm Bureau's obligation to pay under the insurance contract was not controlled by the phrase "using parts of like kind and quality." Rather, other modifying language in the policy allowed Farm Bureau, upon giving notice to glass repair shops, to pay only the amount it had previously agreed to pay for these claims. The district court found the insurance policy was not ambiguous and that Farm Bureau had fulfilled its obligations. Cascade timely filed this appeal.

## II.

### STANDARD OF REVIEW

■■■ On appeal from the grant of a motion for summary judgment, we review that decision de novo but apply the same standard used by the district court in ruling on the motion. *McColm–Traska v. Valley View Inc.*, 138 Idaho 497, 65 P.3d 519 (2003); *Carnell v. Barker Management, Inc.*, 137 Idaho 322, 48 P.3d 651 (2002). As a general rule, this Court will affirm the judgment "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c); *Carnell*, 137 Idaho at 327, 48 P.3d at 656. When making its determination, the Court construes all facts in the light most favorable to the nonmoving party. *Id.*

## III.

### ANALYSIS

#### A. The Insurance Policy is Unambiguous

■■■ In interpreting an insurance policy, "where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used." *Clark v. Prudential Property and Cas. Ins. Co.*, 138 Idaho 538, 541, 66 P.3d 242, 245 (2003) (citing *Mutual of*

*Enumclaw Ins. Co. v. Roberts,* 128 Idaho 232, 235, 912 P.2d 119, 122 (1996)). "This Court construes insurance contracts in a light most favorable to the insured and in a manner which will provide full coverage for the indicated risks rather than to narrow its protection." *Smith v. O/P Transp.,* 128 Idaho 697, 700, 918 P.2d 281, 284 (1996).

 In construing an insurance policy, the Court must look to the plain meaning of the words to determine if there are any ambiguities. *Clark,* 138 Idaho at 540, 66 P.3d at 244. This determination is a question of law. *Trinity Universal Ins. Co. v. Kirsling,* 139 Idaho 89, 92, 73 P.3d 102, 105 (2003) (citing *DBSI/TRI V. v. Bender,* 130 Idaho 796, 802, 948 P.2d 151, 157 (1997)). In resolving this question of law, the Court must construe the policy "as a whole, not by an isolated phrase." *Selkirk Seed Co. v. State Ins. Fund,* 135 Idaho 434, 437, 18 P.3d 956, 959 (2000). An insurance policy provision is ambiguous if "it is reasonably subject to conflicting interpretations." *North Pac. Ins. Co. v. Mai,* 130 Idaho 251, 253, 939 P.2d 570, 572 (1997) (citing *City of Boise v. Planet Ins. Co.,* 126 Idaho 51, 55, 878 P.2d 750, 754 (1994)).

 If the Court finds any ambiguities in the insurance policy, they must be construed against the insurer. *Farmers Ins. Co. of Idaho v. Talbot,* 133 Idaho 428, 435, 987 P.2d 1043, 1050 (1999); *See also Foremost Ins. Co. v. Putzier,* 102 Idaho 138, 627 P.2d 317 (1981) (". . . insurance policies are to be construed most liberally in favor of recovery, with all ambiguities being resolved in favor of the insured"). If a policy is found to be ambiguous, then its interpretation is a question of fact. *See Clark v. Prudential Property and Cas. Ins. Co.,* 138 Idaho 538, 541, 66 P.3d 242, 245 (2003).

Cascade contends the phrase ". . . cost of repair or replacement using parts of like kind and quality" is ambiguous because there are different possible interpretations. Cascade's position is that since every submitted invoice to Farm Bureau for repair or replacement auto glass work was based upon services using parts "of like kind and quality," Farm Bureau is obligated to pay the full amount of Cascade's invoice, not some lesser amount it "agrees" it will pay. Cascade misconstrues

the policy. In determining the meaning of an insurance policy, the Court must construe it as a whole, not by an isolated phrase. *Selkirk Seed Co. v. State Ins. Fund,* 135 Idaho 434, 437, 18 P.3d 956, 959 (2000). The policy language expressly states that the limit of Farm Bureau's liability under the insurance contract is the cost of repair or replacement agreed upon by Farm Bureau or an estimate written based upon the prevailing competitive price.

It is clear that the phrase "using parts of like kind and quality" has two functions. First, it is a liability limiting mechanism, stating that Farm Bureau is not obligated to pay for more superior parts or even exactly the same manufactured parts as originally existed on the vehicle; it must only pay for parts of like kind and quality. Second, when read in conjunction with the rest of "Coverage S," it provides a full description of benefits to the insured, explaining that the insured can obtain glass repair or replacement services in any community in Idaho "using parts of like kind and quality" at the prices Farm Bureau has agreed to pay.

The policy cannot be reasonably interpreted to mean that Farm Bureau is obligated to pay whatever Cascade charges for glass repair so long as the parts are of like kind and quality. Obviously, if this were the case, Cascade could charge unreasonable labor rates for the glass-work and yet claim that the insurance company is obligated to pay the entire invoice because like kind and quality parts were used. Therefore, we agree with the district court's decision that the policy provisions are not ambiguous. Farm Bureau's obligation is to pay either what it has previously agreed to pay, or set its pricing standard on a written estimate based upon the prevailing competitive price.

**B. Farm Bureau Fulfilled its Obligations Under the Contract**

 Having found no ambiguity in the policy, we next analyze whether there is any issue of material fact as to Farm Bureau's compliance with the obligations under the insurance contract. Cascade asserts that even if the policy is interpreted to allow

Farm Bureau complete discretion to pay what it agrees to pay for glass replacement and repair services, summary judgment should not have been granted because there is still a disputed issue of fact as to whether Farm Bureau has met its policy obligations as to the specific invoices in question. Cascade argues that Farm Bureau failed to fulfill its obligations because the amounts it agreed to pay were less than the reasonable cost to Cascade to provide the required parts and services.

The policy is clear in stating that Farm Bureau will pay the amount agreed to by Farm Bureau. There is no dispute that Farm Bureau has notified the glass shops in advance of the rates it will pay for glass repair and replacement. Cascade had one of three options available to it upon receiving Farm Bureau's notice: it could simply do the work and accept the amount Farm Bureau had stated it would pay; it could accept the insurance payment and collect the difference from the insured; or it could refuse to perform services for Farm Bureau insureds unless the customer paid it for the work, leaving the customer to seek reimbursement from Farm Bureau. It appears Cascade chose the first option. Cascade was unquestionably on notice of the amount Farm Bureau would pay and, nevertheless, proceeded with the work, knowing there was a limit on the amount it would receive. Farm Bureau paid the amount it had agreed to pay and has fulfilled its obligations under the policy.

Cascade also argues that the phrase in Coverage S which says "cost of repair agreed upon by us" has to mean as agreed upon between Farm Bureau and Cascade, because otherwise Farm Bureau could unilaterally set low payment amounts for glass repair, making the coverage illusory. While it is true the terms of the policy could conceivably be read to allow Farm Bureau to agree to pay one dollar per glass claim, there are other possible causes of action or challenges which could be asserted in that instance. Here, Cascade has basically brought a collection action, contending that Farm Bureau has failed to pay the full amounts of Cascade's invoices. Under the facts as presented, Cascade received notice of the amounts Farm Bureau would pay, Cascade voluntarily provided the services and was paid the amount Farm Bureau agreed it would pay. There is no basis for this Court to opine on some other possible set of facts.

We agree with the district court that the provisions of the insurance policy clearly provide that Farm Bureau can make a unilateral agreement about what amounts it will pay for windshield replacement or repair services. There is no issue of fact that once it made that determination, it provided notice in advance to all of the glass companies. The facts are also undisputed that Cascade accepted these Farm Bureau insured customers, agreed to provide the work, provided materials of like kind and quality, and was paid in full in the amount Farm Bureau had previously indicated it would pay. Therefore, Cascade has been paid all the money to which it was entitled under the policy and there is no breach of the insurance contract.

## IV.

### CONCLUSION

After looking at the plain meaning of the words of the insurance contract at issue, the district court was correct in determining the policy is not ambiguous and that Farm Bureau has fully performed its obligations under the policy. Therefore, the district court's order granting summary judgment to Farm Bureau is affirmed. We award costs on appeal to Farm Bureau.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES concur.