# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49587-2022

| | | |
|---|---|---|
| BRUNOBUILT, INC., an Idaho corporation, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, May 2024 Term |
| | ) | |
| v. | ) | Opinion filed: December 31, 2024 |
| | ) | |
| AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation, | ) ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RANDY L. RICHARDSON, an individual; RICHARDSON INSURANCE SERVICES, INC., an Idaho corporation, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Lynn G. Norton, District Judge.

The decision of the district court is <u>reversed</u> and <u>remanded</u>.

McConnell Wagner Sykes & Stacey PLLC, Boise, for Appellant. Chad M. Nicholson argued.

Brassey Crawford, PLLC, Boise, for Respondent. Ryan Janis argued.

---

ZAHN, Justice.

This case involves the alleged negligence of an insurance agent. At this juncture, the case turns on whether an insurance policy provides coverage for damage caused to real property by a landslide. BrunoBuilt, Inc., contracted with William and Amy Dempsey to build a home on real property that they owned in the Boise Foothills. With the assistance of a local insurance agent, Randy L. Richardson, and his agency, Richardson Insurance Services, Inc. (collectively "Richardson"), BrunoBuilt purchased a Tailored Protection Policy ("TPP") from Auto-Owners

Insurance Company, which included "Builders' Risk" coverage. After contracting with the Dempseys, BrunoBuilt added the Dempsey project to its TPP in 2015. The policy purported to exclude coverage for damage caused by landslides. On March 28, 2016, BrunoBuilt's TPP was renewed, but the Dempsey project was not included in that renewal, allegedly due to Richardson's negligence.

Shortly after the renewal date, the Dempsey home, which was nearly complete, was visibly damaged by a landslide. BrunoBuilt sued Richardson and Auto-Owners, asserting that Richardson negligently failed to advise BrunoBuilt concerning the availability of landslide coverage and negligently failed to renew coverage for the Dempsey project. BrunoBuilt asserted claims against Auto-Owners on the theory that it was vicariously liable for Richardson's negligence. The district court granted summary judgment in favor of Auto-Owners, concluding (1) that Richardson was not acting as Auto-Owners' agent, and (2) that, even if Richardson was Auto-Owners' agent, the policy excluded damage caused by the landslide. BrunoBuilt appealed. For the reasons discussed below, we conclude that the district court erred in granting summary judgment to Auto-Owners. Accordingly, we reverse its orders dismissing BrunoBuilt's negligence/respondeat superior claims against Auto-Owners and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual circumstances underlying this appeal.

This is the fourth appeal that this Court has considered related to claims that BrunoBuilt asserted against various parties following the reactivation of a landslide in the Boise Foothills that caused damage to the Dempsey home. This appeal concerns BrunoBuilt's negligence claims against its insurance company, seeking damages for the insurance agent's failure to include the real property at issue in the renewal of BrunoBuilt's policy. We described the underlying events in our recent decision in *BrunoBuilt, Inc. v. Erstad Architects, PA*, 172 Idaho 1, 528 P.3d 531 (2023):

> The property central to this appeal is Lot 16 of Terra Nativa Subdivision No. 4 in Boise ("the [Dempsey] Property"), which was purchased by William and Amy Dempsey in 2014. In April 2014, the Dempseys, as owners of the [Dempsey] Property, entered into a construction contract with BrunoBuilt for the construction of a residence on the [Dempsey] Property. . . .
>
> . . . .
>
> . . . [A] portion of the subdivision where the [Dempsey] Property was located was constructed on a pre-existing landslide.

2

In February 2016, as observed by BrunoBuilt's retained civil and geotechnical engineering expert, "the North Alto Via Landslide ('NAVL') reactivated. The NAVL began moving beneath a portion of the Subdivision where [the Dempsey Property is] located." At this time, construction on the home was practically complete. BrunoBuilt continued finishing work up to the final inspections, despite awareness of the landslide's reactivation in Terra Nativa. As Robert Bruno later detailed in an affidavit, "final heating, final plumbing, final electrical, and final building inspections were conducted in and around February and March of 2016. The Dempsey Home passed all final building inspections relating to the physical structure of the home." The only remaining hurdle was the certificate of occupancy from the City of Boise.

Initially, the landslide only presented outward physical manifestations on the neighboring properties. However, in the subsequent weeks a landslide scarp, indicating earth movement, became visible on the [Dempsey] Property. When the highway district, fire department, and utility services to the [Dempsey] Property were terminated due to the landslide, the City of Boise would not issue a certificate of occupancy for the residence. Regarding the specific date that physical effects were seen on the [Dempsey] Property, BrunoBuilt stated in an answer to an interrogatory that the landslide was specifically "observed or noticed on the Dempsey Lot in March/April 2016." The effects of the landslide were not isolated to the presence of the scarp, which was indicative of serious problems below the surface.

*Id.* at 5–7, 528 P.3d at 535–37 (footnote omitted). BrunoBuilt filed several lawsuits, including the present litigation, after the City of Boise refused to issue a certificate of occupancy for the Dempsey home. *Id.* at 6–7, 528 P.3d at 536–37.

**B. Additional facts relevant to the issues in this appeal.**

BrunoBuilt is a longtime home builder. Years prior to this litigation, BrunoBuilt contracted with Richardson to advise BrunoBuilt on available insurance coverage and, when necessary, assist in obtaining coverage for its business operations. Richardson assisted BrunoBuilt in obtaining a "Tailored Protection Policy" ("TPP") from Auto-Owners that included builders' risk coverage, which covered "direct physical loss or damage caused by a covered peril to 'buildings or structures' or while in the course of construction, erection or fabrication." The Dempsey project was added to the TPP in August 2015.

At the time the Dempsey project was added, the 2015 version of the policy contained a coverage exclusion for loss or damage resulting from "[e]arthquake, including land shock waves or tremors before, during or after volcanic eruption, *landslide*, mud flow, earth sinking, earth rising or earth shifting." (Emphasis added.) The landslide exclusion did not specify whether it pertained to naturally occurring landslides, human-caused landslides, or both.

3

The 2015 policy was set to be renewed on March 28, 2016. About one month prior to the renewal date, Richardson sent an email to BrunoBuilt's owner, Robert Bruno, asking that, for "the current homes I show[,] will any be completed by March 28th?" Robert responded that, "[t]he homes that will not be completed by March 28th are the job on lot 25 block 1 in Mace (Flanagan) and the Dempsey job will likely be done right at the end of March." Richardson did not include the Dempsey project in the 2016 TPP renewal. Relevant here, the 2016 policy revised the exclusion for damage resulting from landslides, specifically providing that damage from both naturally occurring landslides and those caused by human activity were excluded from coverage.

Damage to the land beneath the Dempsey home caused by the landslide became noticeable sometime between April and June 2016. BrunoBuilt, with Richardson's assistance, filed a claim with Auto-Owners. On July 1, 2016, an employee of BrunoBuilt emailed one of the agents at Richardson Insurance regarding the insured value of the Dempsey project. The Richardson Insurance agent responded that the value was set at $669,943.00. The BrunoBuilt employee requested that the value be increased to $850,000.00. About one week later, the Richardson Insurance agent responded that Auto-Owners "said that Randy [Richardson] had this location deleted per you guys [BrunoBuilt] effective the renewal. March 28th, 2016." BrunoBuilt claims this was the first time it learned that the Dempsey project had not been included in the 2016 renewal. Richardson, who is not a party to this appeal, claimed that the Dempsey project was not included in the 2016 policy at BrunoBuilt's request. BrunoBuilt requested that Auto-Owners reinstate coverage for the Dempsey project retroactive to the renewal date, but Auto-Owners declined and closed BrunoBuilt's claim.

## C. Procedural history.

In July 2018, BrunoBuilt sued Richardson and Auto-Owners. It asserted that Richardson was negligent, and that Auto-Owners was liable for Richardson's negligence based on the doctrine of respondeat superior. BrunoBuilt alleged that Richardson was negligent in two regards: (1) he failed to properly advise BrunoBuilt regarding the existence, cost, and need for landslide coverage ("failure to procure claim"); and (2) he failed to include the Dempsey project in the 2016 TPP renewal ("failure to renew claim"). BrunoBuilt later filed an amended complaint asserting new claims against Richardson and Auto-Owners, none of which are at issue in this appeal. BrunoBuilt later stipulated to dismiss Randy Richardson and Richardson Insurance from the case, and they are not parties to this appeal.

4

Auto-Owners filed two separate motions for summary judgment, one for each negligence/respondeat superior claim. The first summary judgment motion addressed BrunoBuilt's failure to procure claim, and Auto-Owners argued the claim should be dismissed because Richardson was acting as an agent of BrunoBuilt, not Auto-Owners (the "first MSJ"). Auto-Owners also argued for the first time in its reply brief that the claim should be dismissed because Auto-Owners did not offer coverage for damage resulting from landslides. In support of this new argument, Auto-Owners filed the declaration of Jeff Longstreth in which Longstreth averred that, at all relevant times, "Auto-Owners did not write any lines of coverage and/or offer any policies of insurance that provided insurance coverage for landslides and/or earth movement." Longstreth alleged that "Auto-Owners did not provide insurance coverage for the type of risk that [BrunoBuilt] alleges [Richardson] negligently failed to advise."

The district court held a hearing on the motion on February 5, 2020. At the start of the hearing, BrunoBuilt objected to the Longstreth declaration, arguing that it was improperly filed with Auto-Owners' reply brief and should not be considered because BrunoBuilt had not been given an opportunity to refute it. The district court agreed and reset the hearing on the motion to provide BrunoBuilt with the notice required by Idaho Rule of Civil Procedure 56. *See* I.R.C.P. 56(b)(2).

BrunoBuilt deposed Longstreth and then filed a "Notice of Non-Supplementation," indicating that it would not submit additional evidence or arguments. The district court held another hearing on Auto-Owners' first MSJ on March 4, 2020. Neither the Notice of Non-Supplementation nor the transcript from the March 4, 2020, hearing are in the record, but the district court described the content of the notice in its written order on the motion.

Auto-Owners then filed another motion for summary judgment on March 20, 2020 (the "second MSJ"). Auto-Owners argued, in relevant part, that it was entitled to summary judgment on BrunoBuilt's failure to renew claim because, even if Richardson had included the Dempsey project in the 2016 renewal, the 2016 policy excluded coverage for damage resulting from landslides. Therefore, BrunoBuilt could not establish any damages resulting from Richardson's alleged negligence.

On April 3, 2020, the district court issued its written decision granting Auto-Owners' first MSJ. The district court concluded that there was no genuine issue of material fact, and that Richardson was not acting as Auto-Owners' agent (1) when Richardson added the Dempsey

project to the policy and (2) when Richardson later failed to include it in the 2016 renewal. Further, the district court concluded that there was no genuine issue of material fact that Auto-Owners did not provide landslide coverage. The district court concluded that Auto-Owners could not be held liable for Richardson's alleged negligence and granted Auto-Owners' first MSJ.

On April 28, 2020, in response to Auto-Owners' second MSJ, BrunoBuilt argued that the terms of the 2015 policy governed BrunoBuilt's failure to renew claim and that the landslide exclusion in the 2015 policy did not exclude damage caused by human-caused landslides. In support of that argument, BrunoBuilt filed a declaration from a civil engineer, Patrick Shires, who asserted that the landslide was caused by human activity.

In its reply in support of its second MSJ, Auto-Owners argued that the district court had already determined in its April 3, 2020, order that Richardson was not acting as an agent of Auto-Owners when adding the Dempsey project to the 2015 policy and failing to include it in the 2016 renewal. Auto-Owners also objected to the Shires declaration, arguing that BrunoBuilt failed to timely disclose Shires as an expert witness. Finally, Auto-Owners directed the district court to a declaration that Robert Bruno submitted in a different case, wherein he admitted that the Auto-Owners policy provided no coverage for damage resulting from landslides.

The district court held a hearing on Auto-Owners' second MSJ, at which BrunoBuilt argued that the Shires declaration was proper rebuttal expert testimony to refute the Longstreth declaration. The district court noted that it previously gave BrunoBuilt time to respond to the Longstreth declaration and asked whether that "ship [had] sailed" with regard to the argument that the Auto-Owners policy did not provide landslide coverage. BrunoBuilt argued that, although it had not yet filed a motion for reconsideration of the district court's April 3 decision, it would be appropriate for the district court to revisit its decision in light of the argument and evidence submitted in opposition to the second MSJ. In subsequent argument, counsel for BrunoBuilt encouraged the district court to treat its opposition as a motion for reconsideration.

On June 23, 2020, the district court issued its written order granting Auto-Owners' second MSJ and dismissing BrunoBuilt's negligence/respondeat superior claim based on Richardson's allegedly negligent failure to renew coverage for the Dempsey project. The district court declined to consider the Shires declaration because BrunoBuilt failed to timely disclose Shires as an expert witness. The district court then concluded that BrunoBuilt "failed to present a genuine issue of

6

material fact that human activity caused the landslide and/or earth movement." The district court later entered a partial judgment dismissing all of BrunoBuilt's claims against Auto-Owners.

On February 5, 2021, BrunoBuilt filed a motion for reconsideration of the district court's April 3, 2020, and June 23, 2020, decisions granting Auto-Owners' motions for summary judgment. BrunoBuilt argued that the district court erred "by imposing upon BrunoBuilt the burden of proving that the landslide was human-caused without requiring Auto-Owners . . . to first submit admissible evidence that the landslide was naturally occurring." BrunoBuilt argued that, as the moving party, the initial burden was on Auto-Owners to establish that coverage did not exist. BrunoBuilt argued that under the 2015 policy, the burden was on Auto-Owners to establish that the landslide was naturally occurring. Instead, the district court impermissibly shifted the burden to BrunoBuilt to establish that the landslide was "human caused."

The district court denied BrunoBuilt's motion for reconsideration of the dismissal of BrunoBuilt's claims against Auto-Owners, concluding that BrunoBuilt's motion was untimely due to lack of diligence. The district court subsequently entered a final judgment dismissing BrunoBuilt's remaining claims against Richardson. BrunoBuilt timely appealed.

## II.     ISSUES ON APPEAL

1. Whether the district court erred in its April 3, 2020, decision granting Auto-Owners' first summary judgment motion.
2. Whether the district court erred in its June 23, 2020, decision granting Auto-Owners' second summary judgment motion.
3. Whether the district court erred in denying BrunoBuilt's motion for reconsideration of its decisions granting summary judgment.
4. Whether either party is entitled to attorney fees on appeal.

## III.     STANDARDS OF REVIEW

"When reviewing a summary judgment ruling or a ruling on a motion to reconsider a summary judgment order, this Court applies the same standard utilized by the district court in deciding the motion." *Christiansen v. Potlatch #1 Fin. Credit Union*, 169 Idaho 533, 540, 498 P.3d 713, 720 (2021) (citations omitted). Accordingly, "this Court exercises free review to determine if summary judgment is proper." *Id*. (citation omitted). "Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id*. (internal quotation marks and citation omitted). "When considering a motion

7

for summary judgment, this Court construes disputed facts in favor of the nonmoving party and draws all reasonable inferences in the nonmoving party's favor." *Id*. (citation omitted). "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Demoney-Hendrickson v. Larsen*, 171 Idaho 917, 921, 527 P.3d 520, 524 (2023) (citation omitted).

## IV. ANALYSIS

### A. The district court erred in its first summary judgment decision when it dismissed BrunoBuilt's failure to renew claim against Auto-Owners because that claim was not before the court.

Auto-Owners' first MSJ sought dismissal of BrunoBuilt's negligence claim alleging that Richardson failed to procure insurance for the Dempsey property that provided coverage for landslides. Auto-Owners argued that Richardson could not have been acting as Auto-Owners' agent when BrunoBuilt asked him to procure coverage for the Dempsey property because Richardson was a licensed insurance producer for multiple insurance companies. Because Richardson had relationships with multiple insurers, Auto-Owners argued that Richardson was acting as BrunoBuilt's agent when he procured coverage for the Dempsey property. In other words, Richardson was not acting on behalf of Auto-Owners during this process but instead was free to procure coverage from any of the insurers with which he did business.

The district court granted Auto-Owners' first MSJ, which only concerned the negligence claim alleging a failure to procure insurance. However, its decision not only dismissed the failure to procure claim, but also dismissed the failure to renew claim. The district court concluded that summary judgment on both claims was appropriate for two reasons: Richardson was not acting as Auto-Owners' agent, and Auto-Owners did not provide coverage for landslides.

BrunoBuilt's first argument on appeal is that the district court's decision dismissing the failure to renew claim was erroneous because Auto-Owners' first MSJ only sought summary judgment on the claim related to Richardson's alleged failure to procure landslide coverage. Auto-Owners maintains that the district court did not err because it provided BrunoBuilt with notice and additional time to respond and that it correctly concluded that Richardson was not acting as Auto-Owners' agent for purposes of either claim.

"Generally, '[t]he [lower] court may not grant summary judgment on a ground raised *sua sponte*.'" *Papin v. Papin*, 166 Idaho 9, 19, 454 P.3d 1092, 1102 (2019) (alterations in original) (quoting *Sales v. Peabody*, 157 Idaho 195, 201, 335 P.3d 40, 46 (2014)). However, a district court

8

may grant summary judgment on an issue it raised sua sponte if "the party against whom the judgment will be entered [is] given adequate advance notice and an opportunity to demonstrate why summary judgment should not be entered." *Id.* (quoting *Mason v. Tucker & Assocs.*, 125 Idaho 429, 432, 871 P.2d 846, 849 (Ct. App. 1994)).

We conclude that the district court erred in its first summary judgment decision when it dismissed the failure to renew claim. Auto-Owners' first MSJ only sought summary judgment on BrunoBuilt's *failure to procure* claim. Nothing in the record put BrunoBuilt on notice that the district court was going to address whether Richardson was acting as Auto-Owners' agent for purposes of BrunoBuilt's *failure to renew* claim. Accordingly, the district court erred by sua sponte addressing and dismissing BrunoBuilt's failure to renew claim.

However, establishing an error is not the end of our inquiry. "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." I.R.C.P. 61. While Auto-Owners does not expressly argue that any error in dismissing the failure to renew claim was harmless, it implies as much by arguing that the district court correctly determined that Richardson was not acting as BrunoBuilt's agent for purposes of the failure to procure coverage claim and that this conclusion is likewise applicable to the failure to renew claim. Auto-Owners, however, cites no legal authority in support of this proposition and our decision in *Bales v. General Insurance Company of America*, 53 Idaho 327, 24 P.2d 57 (1933), suggests that Richardson could have been acting as Auto-Owners' agent for purposes of the failure to renew claim.

Similar to BrunoBuilt's claims here, *Bales* was a negligence action seeking damages from an insurance company after an agent failed to execute an agreement to renew a policy of insurance and the covered property was thereafter destroyed in a fire. *See* 53 Idaho 327, 24 P.2d 57. In *Bales*, the agent was a cashier for a bank "which had the agency for a number of insurance companies." *Id.* at 331, 24 P.2d at 58. The cashier solicited Bales' business, selected the insurer, wrote the policy and promised to renew the policy. *Id.* However, the cashier negligently failed to renew the policy, and the property Bales thought was covered was destroyed in a fire. *Id.* The insurance company appealed a jury verdict in favor of the insured and asserted several arguments, including that the cashier was acting as the insured's agent at the time he promised to renew the policy. *Id.* at 336–37, 24 P.2d at 60. We rejected the argument and held that it was the duty of the insurance

agent to prepare the policy and execute it and that in performing this duty, he was acting as an agent of the insurer, not the insured. *Id.* at 337–38, 24 P.2d at 60.

Although the district court dismissed both claims, its analysis concluded that our decision in *Bales* was not applicable because it dealt with a failure to renew claim, which was not the claim at issue on summary judgment:

> However, the *Bales* case is not analogous to the relationships between the parties in this case. The *Bales* case deals with a failure to renew, holding that an insurance company was an agent at the time the insurance broker failed to renew the policy. It is important, as identified above, that Auto-Owners is not seeking summary judgment in a case where there was a failure to renew by the Richardson Defendants.

This passage calls into question whether the district court made a determination concerning whether Richardson was acting as Auto-Owners' agent for purposes of the failure to renew claim. While the first summary judgment decision dismissed both claims, the district court did not specify the basis for dismissing the failure to renew claim. Our decision in *Bales* suggests that, once coverage is procured, an agent can be deemed to be acting as an agent of the insurer when the agent promises to renew a policy. We therefore reject any suggestion by Auto-Owners that the district court's conclusion that Richardson was not acting as Auto-Owners' agent for purposes of the failure to procure claim similarly applies to the failure to renew claim.

However, this conclusion is not the end of our harmless error inquiry. In its second summary judgment decision, the district court dismissed BrunoBuilt's failure to renew claim against Auto-Owners on the basis that the policy excluded coverage for landslides. Because the coverage issue provides an alternative basis for dismissing BrunoBuilt's failure to renew claim, we must determine whether the district court erred in that regard before we can determine whether BrunoBuilt was prejudiced by the district court's error. If the district court did not err in concluding that the policy excluded coverage for landslides, then the claim was properly dismissed on different grounds and BrunoBuilt has not been prejudiced by the error on the first summary judgment decision.

**B. The district court erred in its second summary judgment decision because there is a genuine issue of material fact concerning whether the policy provided coverage for damage resulting from landslides caused by human activity.**

BrunoBuilt argues that the district court committed two errors in its second summary judgment decision. BrunoBuilt first argues that the district court erred by treating its opposition to Auto-Owners' second MSJ as a motion for reconsideration of the first summary judgment

decision. BrunoBuilt next asserts that the district court erred in concluding that the policy did not provide coverage because of the landslide exclusion. BrunoBuilt contends that the 2015 policy covered human-caused landslides and that, had Richardson included the Dempsey property in the 2016 renewal, then it would have been entitled to coverage for the landslide claim.

BrunoBuilt's argument is premised on the assertion that the 2016 policy reduced the coverage for landslides and that Auto-Owners was legally required to provide BrunoBuilt with advance notice of that change. BrunoBuilt asserts that because Auto-Owners failed to provide the legally-required advance notice, the 2015 policy continued in place. BrunoBuilt contends that the 2015 policy only excluded coverage for naturally occurring landslides. BrunoBuilt asserts that Shires' declaration establishes that the landslide that damaged the Dempsey home was human-caused and therefore the 2015 policy would have covered his claim.

On the first point, Auto-Owners responds that BrunoBuilt expressly asked the district court to treat its opposition to Auto-Owners' second MSJ as a motion for reconsideration and, therefore, BrunoBuilt should be barred from arguing that the district court erred in doing so. On the second point, Auto-Owners also argues that there was no reduction in coverage; both the 2015 and 2016 policies unambiguously excluded damage caused by landslides, regardless of their cause. As a result, Auto-Owners argues that the district court correctly concluded that BrunoBuilt's policy did not provide coverage for its claim.

In its order granting the second MSJ, the district court considered BrunoBuilt's argument that the 2015 policy provided coverage because the landslide at issue was "human-caused." However, the district court declined to consider the Shires declaration, which BrunoBuilt submitted to establish that the landslide that damaged the Dempsey home was caused by human activity. Having rejected the only evidence in the record indicating that the landslide was human-caused, the district court concluded that BrunoBuilt "failed to present a genuine issue of material fact that human activity caused the landslide and/or earth movement" and dismissed BrunoBuilt's failure to renew claim.

1. *The district court did not err in treating BrunoBuilt's opposition to Auto-Owners' second MSJ as a motion for reconsideration because BrunoBuilt asked it to do so.*

We begin by addressing BrunoBuilt's argument that the district court erred by treating its opposition to Auto-Owners' second MSJ as a motion for reconsideration. "The doctrine of invited error applies to estop a party from asserting an error when [the party's] own conduct induces the commission of the error." *Beebe v. N. Idaho Day Surgery, LLC*, 171 Idaho 779, 789, 526 P.3d 650,

660 (2023) (alteration in original) (citation omitted). "The purpose of the invited error doctrine is to prevent a party who caused or played an important role in prompting a trial court to [take a certain action] from later challenging that [action] on appeal." *Taylor v. McNichols*, 149 Idaho 826, 834, 243 P.3d 642, 650 (2010) (alterations in original) (citation omitted).

BrunoBuilt invited any error that resulted from the district court treating BrunoBuilt's opposition to Auto-Owners' second MSJ as a motion for reconsideration. BrunoBuilt unequivocally requested that the district court treat its opposition as a motion for reconsideration and, as a result, is barred from challenging that action on appeal. *Id.* Additionally, even if BrunoBuilt had not invited the error, the district court's treatment of BrunoBuilt's opposition as a motion to reconsider would not have prejudiced BrunoBuilt's substantial rights because the standard of review for the two motions is the same. *See* I.R.C.P. 61. "When a district court decides a motion to reconsider, 'the district court must apply the same standard of review that the court applied when deciding the original order that is being reconsidered.'" *Int'l Real Est. Sols., Inc. v. Arave*, 157 Idaho 816, 819, 340 P.3d 465, 468 (2014) (citation omitted).

2. *We reverse the district court's grant of summary judgment in favor of Auto-Owners on the failure to renew claim because there are genuine issues of material fact regarding whether the 2015 policy or the 2016 policy applied to BrunoBuilt's claim.*

BrunoBuilt does not dispute that the landslide damage to the Dempsey home occurred sometime after the 2016 policy took effect in late March 2016. Auto-Owners argues, and BrunoBuilt does not dispute, that the 2016 policy unambiguously excludes coverage for the landslide damage to the Dempsey home. Critically, however, BrunoBuilt argues that its claim must be considered under the 2015 policy because Auto-Owners failed to provide notice of a reduction in coverage between the 2015 and 2016 policies and therefore coverage under the 2015 policy remained in effect after its expiration date. BrunoBuilt contends that the 2015 policy only excluded coverage for naturally occurring landslides and the landslide that damaged the Dempsey home was human-caused.

BrunoBuilt's briefing on appeal relied on the generally accepted legal principle that, if insurers fail to provide notice of a reduction in coverage upon renewal, then coverage under the preexisting policy continues. *See, e.g.*, *Thomas v. Nw. Nat'l Ins. Co.*, 973 P.2d 804, 807 (Mont. 1998) ("[W]hen an insurer renews a previously issued policy, it has an affirmative duty to provide adequate notice to the insured of changes in coverage."); D. C. Barrett, Annotation, *Insurance company as bound by greater coverage in earlier policy where renewal policy is issued without*

*calling to insured's attention a reduction the policy coverage*, 91 A.L.R.2d 546 § 3 (2024 update) ("The general rule is that an insurance company is bound by the greater coverage in an earlier policy where the renewal policy is issued without calling to the insured's attention a reduction in the policy coverage."). BrunoBuilt argues that courts across the country adhere to this principle and encourages us to formally recognize it in Idaho.

In reviewing BrunoBuilt's argument on this point, we determine that, while this Court has not adopted the common law rule for which BrunoBuilt advocates, the Idaho Legislature has addressed the issue in Idaho Code section 41-1842(5):

> Notice of premium or coverage changes. *An insurer shall mail or deliver to the named insured, at the last known mailing address, written notice* of a total premium increase greater than ten percent (10%) which is the result of a comparable increase in premium rates, changes in deductibles, reductions in limits, or *reductions in coverages at least thirty (30) days prior to the expiration date of the policy. If the insurer fails to provide such thirty (30) day notice, the coverage provided to the named insured shall remain in effect until thirty (30) days after such notice is given or until the effective date of replacement coverage obtained by the named insured, whichever first occurs.* For the purposes of this section, notice is considered given thirty (30) days following date of mailing or delivery of the notice to the named insured. If the insured elects not to renew, any earned premium for the period of extension of the terminated policy shall be calculated pro rata at the lower of the current or previous year's rate. If the insured accepts the renewal, the premium increase, if any, and other changes shall be effective on and after the first day of the renewal term.

I.C. § 41-1842(5) (emphasis added). Notably, this provision only applies to "[c]ommercial property insurance policies," "[c]ommercial liability insurance policies," and "[c]ommercial multiperil insurance policies." I.C. § 41-1842(1). To determine whether section 41-1842(5) applies to BrunoBuilt's arguments here, we must determine whether the 2015 and 2016 policies are the type of policy covered by the statute. If they are, then we must analyze whether the statute mandates a continuation of the coverage provided by the 2015 policy.

Neither party briefed the applicability of this statute to the policies at issue, nor were they prepared to address the issue at oral argument. Following oral argument, we ordered the parties to provide supplemental briefing regarding whether Idaho Code section 41-1842 applied to the 2015 and 2016 policies. Having received the parties' briefs, we now analyze the applicability of the statute to the policies at issue.

a. The 2015 and 2016 policies are commercial property insurance policies subject to Idaho Code section 41-1842.

BrunoBuilt argues that section 41-1842 applies to the 2015 and 2016 policies because the policies are either commercial property insurance policies or commercial multiperil insurance policies. Auto-Owners offers no argument on this point. We hold that the 2015 and 2016 TPPs constitute "commercial property insurance policies" subject to the provisions of section 41-1842.

Idaho Code section 41-504 defines "property insurance" broadly:

"Property insurance" is insurance on real or personal property of every kind and of every interest therein, whether on land, water, or in the air, against loss or damage from any and all hazard or cause, and against loss consequential upon such loss or damage, other than noncontractual legal liability for such loss or damage. Property insurance does not include title insurance, as defined in section 41-508[, Idaho Code].

(Alteration in original.) While not defined in Idaho's insurance statutes, "commercial" is generally understood to mean "[o]f, relating to, or involving the selling of goods or services for profit[.]" *Commercial*, Black's Law Dictionary (10th ed. 2014).

Applying these definitions to the TPPs, the declarations page for the 2015 TPP states that it "consists of the following coverage part(s)": commercial property coverage, minimum property plus premium adjustment, minimum equipment breakdown premium adjustment, commercial general liability coverage, and commercial inland marine coverage. The commercial inland marine coverage included "Builder's Risk/Installation" coverage, which insured against "accidental direct physical loss or damage, not excluded in this form, to the property covered." The covered property generally included "[b]uildings or structures in the course of construction" with some exclusions that are not at issue here. The Dempsey project was added to the 2015 TPP in August 2015.

The 2016 TPP provided the same five coverages. And the 2016 commercial inland marine coverage again included "Builders' Risk" coverage for "direct physical loss or damage caused by a covered peril to 'buildings or structures' or while in the course of construction, erection or fabrication." The policy further provided that it covered all risks of direct physical loss or damage unless the loss was limited or caused by a peril that was excluded.

Neither party disputes that BrunoBuilt was engaged in a commercial venture when it contracted to build the Dempsey project. Nor do they dispute that the TPPs provided property coverage. Therefore, we conclude that the 2015 and 2016 policies are subject to the provisions of section 41-1842.

Having determined that the requirements of section 41-1842 applied to the 2015 and 2016 TPPs, we turn to whether there was a change in coverage between the two policies that triggered the notice requirement of section 41-1842(5). The rules we apply when interpreting insurance contracts are well established:

> This Court construes insurance contracts according to "the general rules of contract law subject to certain special canons of construction." *Arreguin v. Farmers Ins. Co. of Idaho*, 145 Idaho 459, 461, 180 P.3d 498, 500 (2008) (quoting *Clark v. Prudential Prop. & Cas. Ins. Co.*, 138 Idaho 538, 540, 66 P.3d 242, 244 (2003)). "Beginning with the plain language of the insurance policy, the first step is to determine whether or not there is an ambiguity." *McFarland v. Liberty Ins. Corp.*, 164 Idaho 611, 615, 434 P.3d 215, 219 (2019) (quotation and citation omitted). In determining if any ambiguity exists, "the Court must construe the policy 'as a whole, not by an isolated phrase.' " *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 663, 115 P.3d 751, 754 (2005) (quoting *Selkirk Seed Co. v. State Ins. Fund*, 135 Idaho 434, 437, 18 P.3d 956, 959 (2000)). The language of an insurance policy "is ambiguous if it is subject to conflicting but reasonable interpretations." *Id.*
>
> If the language used is unambiguous, this Court gives effect to the plain and ordinary meaning of the words used in the policy. *Id.* at 662, 115 P.3d at 753. We do not charge policyholders with knowledge of how "courts around the country have construed certain words or [with] the knowledge of those who have spent their careers working in or with the insurance industry." *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 320, 233 P.3d 1221, 1242 (2010). Rather, "[u]nless contrary intent is shown, common, non-technical words are given the meaning applied by laymen in daily usage—as opposed to the meaning derived from legal usage—in order to effectuate the intent of the parties." *Armstrong v. Farmers Ins. Co. of Idaho*, 147 Idaho 67, 69, 205 P.3d 1203, 1205 (2009) (quoting *Howard v. Or. Mut. Ins. Co.*, 137 Idaho 214, 217, 46 P.3d 510, 513 (2002)). However, this Court cannot create by construction "a liability not assumed by the insurer nor make a new contract for the parties, or one different from that plainly intended, nor add words to the contract of insurance to either create or avoid liability." *Id.* (quoting *Purvis v. Progressive Cas. Ins. Co.*, 142 Idaho 213, 216, 127 P.3d 116, 119 (2005)). Yet, where an ambiguity exists, this Court adheres to the general rule that "any ambiguity . . . must be construed most strongly against the insurer." *Gearhart v. Mut. of Enumclaw Ins. Co.*, 160 Idaho 664, 667, 378 P.3d 454, 457 (2016) (quoting *Arreguin*, 145 Idaho at 461, 180 P.3d at 500).

*Progressive Nw. Ins. Co. v. Lautenschlager*, 168 Idaho 841, 845–46, 488 P.3d 509, 513–14 (2021) (alterations in original).

The 2015 policy excluded damage from landslides but did not distinguish between naturally occurring and human-caused landslides:

We do not cover loss or damage caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss or damage:

. . . .

h. Earthquake, including land shock waves or tremors before, during or after volcanic eruption, *landslide*, mud flow, earth sinking, earth rising or earth shifting.

(Emphasis added.)

The 2016 policy replaced the aforementioned landslide exclusion with a more robust exclusion for "earth movement," which explicitly excluded damage caused by "earth movement," whether naturally occurring or human-caused:

We do not pay for loss or damage caused directly or indirectly by, or consisting of, one or more of the following excluded causes, events or conditions. Such loss or damage is excluded regardless of other causes, events or conditions that contribute in any sequence to or aggravate the loss, whether such causes, events or conditions act to produce the loss before, at the same time as or after the excluded causes, events or conditions.

. . . .

**b. Earth Movement** Any "earth movement" *whether natural or manmade* and regardless of cause and regardless of whether or not the cause of the "earth movement":

(1) Originated at the covered property; or

(2) Was being performed at your request or for your benefit.

However, if eruption, explosion or effusion of a volcano results in "volcanic action", we will pay for the loss or damage caused by that "volcanic action".

If "earth movement" results in fire, we will pay for the loss or damage caused by that fire. If "earth movement" (other than eruption, explosion or effusion of a volcano) results in explosion, we will pay for the loss or damage caused by that explosion.

This exclusion does not apply to covered property while in transit.

(Bolding in original; italics added.)

BrunoBuilt argues that the landslide exclusion in the 2015 policy only excludes damage resulting from naturally occurring events and because it does not reference any human-caused events, it only excludes damage resulting from naturally occurring landslides. As a result, the 2015 policy provides coverage for human-caused landslides. BrunoBuilt argues that the 2016 policy changed coverage because it specifically excludes coverage for both naturally occurring and human-caused landslides.

Auto-Owners argues that the 2015 policy made no distinction between naturally occurring and human-caused landslides; therefore, the 2015 policy excluded damage from all landslides, regardless of the cause. Auto-Owners contends that, although the 2015 and 2016 policies used different language, they each excluded coverage for all landslides, regardless of cause, and there was no change in coverage.

When construing an insurance policy our obligation is to "construe the policy 'as a whole, not by an isolated phrase.' " *Cascade Auto Glass, Inc.*, 141 Idaho at 663, 115 P.3d at 754 (citation omitted). The 2015 policy exclusion references events that are commonly understood to be naturally occurring, such as earthquakes, mud flows, and volcanic eruptions. BrunoBuilt's interpretation of "landslide" is reasonable because, when read in the context of the entire exclusion, it can reasonably be interpreted as referring to naturally occurring landslides. However, Auto-Owners' interpretation of the word "landslide" as including all landslides, regardless of cause, is also reasonable. Because the 2015 policy is ambiguous in this regard, our rules of interpretation for insurance contracts direct us to construe the term in favor of coverage. *E.g.*, *Mason v. State Farm Mut. Auto. Ins. Co.*, 145 Idaho 197, 201, 177 P.3d 944, 948 (2007) ("If the Court finds any ambiguities in the insurance policy, they must be construed against the insurer." (citation omitted)).

Courts interpreting similar policy language have concluded that these provisions only exclude coverage for naturally occurring landslides. *See Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1087 & n.3 (Fla. 2005) (collecting cases) ("[T]he overwhelming majority of courts interpreting earth movement exclusions that do not contain lead-in language precluding coverage for damage from earth movement 'regardless' of its cause have concluded that such exclusions apply only to earth movement that arises from natural events."). The Supreme Court of New Mexico limited the meaning of "earth movement" to naturally occurring events because that phrase followed a list of "other naturally occurring phenomenon" including "flood, earthquake, landslide, [and] subsidence." *United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 709 P.2d 649, 652 (N.M. 1985). The Tennessee Court of Appeals reached a similar result, concluding that the meaning of "earth movement" is limited to naturally occurring events because that phrase is followed by a list of naturally occurring events "such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting." *Rankin ex rel. Rankin v. Generali-U.S. Branch*, 986 S.W.2d 237, 239–40 (Tenn. Ct. App. 1998). The Oklahoma Supreme Court reached a similar conclusion. *Broom v. Wilson*

*Paving & Excavating, Inc.*, 356 P.3d 617, 632 (Okla. 2015) (characterizing "earthquakes, landslides, and mud flows" as naturally occurring events that limit the scope of an "earth movement" exclusion).

After considering the decisions from our sister states, and our rules of construction directing us to construe ambiguous policy language against the insurer, we conclude that the 2015 policy only excluded damage resulting from naturally occurring landslides. The 2015 policy exclusion only excluded coverage for damage resulting from naturally occurring events. The 2016 policy expanded that language to exclude coverage for damage resulting from both naturally occurring and human-caused events. The 2015 policy <u>did not</u> exclude coverage for human-caused landslides, while the 2016 policy changed the policy language so it <u>did</u> exclude coverage. Therefore, we hold that the 2016 policy reduced the coverage available for landslides. We turn next to whether Auto-Owners notified BrunoBuilt of that change in coverage as required by section 41-1842(5).

b. <u>Because Auto-Owners failed to provide BrunoBuilt with notice of the change in coverage, the landslide coverage under the 2015 policy continued past its expiration date.</u>

As previously discussed, section 41-1842(5) provides that "[a]n insurer shall mail or deliver to the named insured, at the last known mailing address, written notice of . . . reductions in coverages at least thirty (30) days prior to the expiration date of the policy." BrunoBuilt argues that Auto-Owners did not provide the required notice of the reduction in landslide coverage. Auto-Owners did not address this issue in its supplemental briefing, likely because it contends there was no reduction in coverage. Our review of the record reveals that the only possible notice of a change in coverage was the mailing of the 2016 policy to BrunoBuilt. Therefore, we will analyze whether delivering a copy of the 2016 policy to BrunoBuilt fulfilled the notice requirement of section 41-1842(5).

We hold that "written notice" unambiguously requires more than merely providing an insured with a copy of a renewal policy. Section 41-1842 does not address what constitutes sufficient "written notice" of a change in coverage. However, section 41-1842 references "policy" at some points and "notice" at others, thereby suggesting that the two terms are not synonymous. *See* I.C. § 41-1842(5) ("An insurer shall mail or deliver to the named insured, at the last known mailing address, *written notice* of . . . reductions in coverages at least thirty (30) days prior to the expiration date of *the policy*."). "When determining the plain meaning of a statute, 'effect must be

given to all the words of the statute if possible, so that none will be void, superfluous, or redundant.' " *Verska v. Saint Alphonsus Reg. Med. Ctr.*, 151 Idaho 889, 897, 265 P.3d 502, 510 (2011) (quoting *In re Winton Lumber Co.*, 57 Idaho 131, 136, 63 P.2d 664, 666 (1936)). If we were to conclude that the mere delivery of the policy satisfied the written notice requirement, this would essentially render the notice language of the statute meaningless. Therefore, to give effect to all the words of section 41-1842(5), we construe the phrase "written notice" as requiring something more than delivery of the insurance policy.

It is a broadly accepted rule that insurers must provide adequate notice of changes in coverage to insureds in the context of a renewal because the law does not impose a duty on the insured to scour a renewal policy for changes absent notice from the insurer:

> The law does not impose on the insured under a renewal policy the duty to inspect the renewal policy, and the failure of the insured to examine his or her new policy when it was delivered to him or her, which would have led him or her to discover an added clause, does not defeat recovery under the terms of the original policy where the insurer did not inform the insured that the renewal policy would in any way be different from the original.

2 Couch on Ins. § 29:42 (3d ed. 2024 update) (footnotes omitted).

For the foregoing reasons, we hold that mailing a copy of the 2016 policy did not fulfill the written notice requirement of section 41-1842(5). There is no indication in the record that Auto-Owners provided written notice to BrunoBuilt of the reduction in landslide coverage. The consequence of failing to provide the required notice is that "the coverage provided to the named insured shall remain in effect until thirty (30) days after such notice is given or until the effective date of replacement coverage obtained by the named insured, whichever first occurs." I.C. § 18-1842(5). Therefore, we hold that the landslide coverage provided by the 2015 policy continued until Auto-Owners provided the written notice required by the statute, or until BrunoBuilt obtained replacement coverage. Having addressed the applicability of the 2015 policy, we turn to the merits of the district court's decision granting summary judgment and dismissing BrunoBuilt's failure to renew claim on the basis that the Auto-Owners' policy did not provide landslide coverage.

c. The district court erred in granting summary judgment because there are genuine issues of material fact concerning the applicability of the 2015 policy and because it misapplied the burden of proof.

In its decision granting Auto-Owners' second MSJ and dismissing BrunoBuilt's failure to renew claim, the district court began its analysis by referring back to its first summary judgment decision in which it concluded that Auto-Owners did not provide coverage for landslides. In that

decision, the district court based its conclusion on a declaration from Auto-Owners' manager of TPP underwriting, Jeff Longstreth. Longstreth averred that Auto-Owners, at all relevant times, did not write any lines of insurance providing coverage for damage caused by landslides. The district court then indicated that it would consider BrunoBuilt's argument that the 2015 policy provided coverage for human-caused landslides.

Before reaching the merits of that argument, however, the district court considered Auto-Owners' objection to the declaration of Patrick Shires, a geotechnical engineer who concluded that the reactivation of the North Alto Via Landslide was human-caused. The district court excluded the Shires declaration after determining it was inadmissible because BrunoBuilt had not timely disclosed Shires as an expert witness.

The district court then rejected BrunoBuilt's argument concerning the 2015 policy, concluding that it had previously determined that Auto-Owners did not provide coverage for landslides and "since there is no admissible evidence that human activity caused the landslide/earth movement and damages to the Dempsey residence, the [c]ourt will not further address [BrunoBuilt]'s argument that the TPP or renewal covered landslides and/or earth movement from human activity."

BrunoBuilt argues that the district court erred in relying on the Longstreth declaration to conclude there was no genuine issue of material fact concerning coverage and in erroneously placing the burden of proof on BrunoBuilt to establish that the landslide exclusion did not apply. Auto-Owners responds that the district court did not err in either regard. We agree with BrunoBuilt and hold that the district court erred in granting summary judgment on the basis that Auto-Owners did not provide landslide coverage.

We begin our discussion with the district court's conclusion in its first summary judgment decision that the Longstreth declaration established that there was no genuine issue of material fact that Auto-Owners did not write coverage for landslides. Auto-Owners filed the Longstreth declaration with its reply brief in support of its first MSJ. The district court cited the following testimony from Longstreth's declaration as establishing that there was no genuine issue of material fact that Auto-Owners did not provide landslide coverage:

> At all relevant times set forth in Plaintiff BrunoBuilt, Inc.'s Complaint and Demand for Jury Trial, CV01-18-12862, Auto-Owners did not write any lines of coverage and/or offer any policies of insurance that provided insurance coverage for landslides and/or earth movement. In other words, Auto-Owners did not provide

20

> insurance coverage for the type of risk that Plaintiff BrunoBuilt, Inc. alleges Randy
> Richardson and/or Richardson Insurance Services, Inc. negligently failed to advise.

The district court erred in granting summary judgment on the coverage issue based on Longstreth's testimony because the interpretation of an insurance policy is a question of law. *See Rizzo v. State Farm Ins. Co.*, 155 Idaho 75, 79, 305 P.3d 519, 523 (2013) ("[T]he interpretation of the legal effect of an insurance policy is a question of law[.]" (citation omitted)). While Longstreth may have an opinion that neither policy provided coverage for landslides, his opinion does not bind the court on a question of law. The district court was obligated to examine the language of the respective policies to answer the legal question of whether either policy provided coverage for human-caused landslides.

For the reasons previously discussed, we conclude that the 2015 policy provided coverage for human-caused landslides and that the coverage continued for some amount of time under the provisions of Idaho Code section 41-1842(5). However, the record on appeal lacks evidence necessary to determine whether that coverage was still in effect at the time of the damage to the Dempsey home and we therefore remand for further proceedings.

First, we have held that the district court erred in sua sponte dismissing BrunoBuilt's failure to renew claim on the basis that Richardson was not acting as BrunoBuilt's agent. This is one issue to be resolved on remand.

Second, the record lacks evidence concerning whether Auto-Owners provided written notice to BrunoBuilt concerning the 2016 policy's reduction in coverage for human-caused landslides, and if so, when that occurred. The record on appeal also does not indicate whether BrunoBuilt obtained replacement coverage, and if so, when that occurred. Depending on the district court's conclusions concerning agency, these issues may also need to be resolved on remand.

Finally, in the event it is determined that the 2015 policy coverage terminated at some point because Auto-Owners either provided written notice of the reduction in coverage or BrunoBuilt obtained replacement coverage, the record does not contain evidence establishing the date of loss for damage to the Dempsey home. In the absence of this evidence, Auto-Owners did not meet its burden of establishing there was no genuine issue of material fact and that it was entitled to judgment as a matter of law on its lack of coverage defense. We therefore reverse the district court's order granting summary judgment on BrunoBuilt's failure to renew claim and remand for further proceedings consistent with this opinion.

21

Because our conclusion on the coverage issue mandates reversal, we would not ordinarily address BrunoBuilt's other argument concerning assignment of the burden of proof. However, "[w]here an appellate court reverses or vacates a judgment upon an issue properly raised, and remands for further proceedings, it may give guidance for other issues on remand." *Hood v. Poorman*, 171 Idaho 176, 191, 519 P.3d 769, 784 (2022) (quoting *N. Idaho Building Contractors Assoc. v. City of Hayden*, 164 Idaho 530, 540, 432 P.3d 976, 986 (2018)). "In offering guidance, however, we are aware that such guidance should only be given on issues that are absolutely necessary, and regarding issues that have a practical effect on *this appeal*; otherwise, we would be offering an impermissible advisory opinion cloaked as 'guidance.'" *Id.* (quoting *N. Idaho Building Contractors Assoc.*, 164 Idaho at 540, 432 P.3d at 986).

In its second summary judgment decision, the district court treated the Shires declaration as necessary evidence for BrunoBuilt to meet its burden on summary judgment. In other words, the district court placed the burden on BrunoBuilt to establish that the 2015 policy exclusion did not apply because the landslide was human-caused. We conclude that the district court erred in this regard because it was Auto-Owners' burden, as the insurer, to establish that the landslide exclusion precluded coverage.

Where an insurer "seeks to avoid liability on the ground that the accident or injury is within one of the exceptions in the policy, the burden rests upon it to prove facts bringing the case within the exception." *O'Neil v. N.Y. Life Ins. Co.*, 65 Idaho 722, 732, 152 P.2d 707, 711 (1944) (citation omitted). Thus, "[a]n insurance policy will generally be construed so that the insurer bears the burden of proving that the asserted exclusion is applicable." *ABK, LLC v. Mid-Century Ins. Co.*, 166 Idaho 92, 97, 454 P.3d 1175, 1180 (2019) (quoting *Perry v. Farm Bureau Mut. Ins. Co. of Idaho*, 130 Idaho 100, 103, 936 P.2d 1342, 1345 (Ct. App. 1997)). Our caselaw is clear that, on remand, Auto-Owners bears the burden of establishing the applicability of the landslide exception. The district court erred in granting summary judgment based, in part, on its conclusion that BrunoBuilt failed to prove that the exclusion did not apply.

Given our conclusion that the district court erred in its second decision granting summary judgment, we conclude that its error in its first summary judgment decision on the agency issue was not harmless. As a result, we also reverse the district court's grant of summary judgment in its first summary judgment decision, to the extent it concluded that BrunoBuilt's failure to renew

claim should be dismissed because Richardson was not acting as Auto-Owners' agent when he failed to include the Dempsey project in the 2016 renewal.

## C. We do not address BrunoBuilt's arguments regarding the district court's March 22, 2021, decision denying reconsideration.

BrunoBuilt also argues that the district court erred in denying its motion for reconsideration of the district court's decisions granting summary judgment on its failure to renew claim. Because we reverse the district court's grant of summary judgment in favor of Auto-Owners on its failure to renew claim, we need not address whether the district court erred in denying BrunoBuilt's motion to reconsider that decision.

## D. We do not award either party attorney fees on appeal.

Both parties request attorney fees on appeal. BrunoBuilt argues that it is entitled to fees pursuant to Idaho Code section 12-120(3) because "[t]his appeal arises out of both a commercial transaction and a contract relating to the purchase or sale of goods, wares, merchandise, or services." Auto-Owners argues that it is entitled to fees on appeal pursuant to Idaho Code sections 12-120(3) and 12-121.

Idaho Code section 12-120(3) states that, "[i]n any civil action to recover on . . . any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." Idaho Code section 12-121 states that attorney fees may be awarded to the prevailing party when "the case was brought, pursued or defended frivolously, unreasonably or without foundation."

Because we reverse the district court's grant of summary judgment in favor of Auto-Owners on the failure to renew claim, BrunoBuilt is the prevailing party on appeal. Therefore, Auto-Owners is not entitled to fees because it is not the prevailing party.

We decline BrunoBuilt's request because BrunoBuilt has failed to demonstrate that it is entitled to an award of fees pursuant to section 12-120(3). "[A] claim based upon tort does not support an award of fees pursuant to [Idaho Code section] 12-120(3)." *Brooks v. Gigray Ranches, Inc.*, 128 Idaho 72, 79, 910 P.2d 744, 751 (1996). BrunoBuilt's claims against Auto-Owners sound in tort and seek to extend tort liability to Auto-Owners under the doctrine of respondeat superior. We therefore decline to award BrunoBuilt attorney fees on appeal under section 12-120(3).

## V. CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of Auto-Owners on BrunoBuilt's failure to renew claim. BrunoBuilt is awarded its costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices BRODY, MOELLER, and MEYER CONCUR.